## YERIAN v BRINKER

Ohio Appeals, 2nd Dist, Franklin Co

No 3224. Decided Feb 13, 1941

Hamilton & Kramer, Columbus, for plaintiff-appellee.

Noel F. Greenlee, Columbus, for defendant-appellant.

## OPINION

By HORNBECK, J.

Before considering this case on the merits on the original appeal we will dispose of a cross-appeal of defendant from an order of the trial judge changing the date of the judgment entry to conform to the fact as found by the court. Without comment, we find against the claim of the defendant on his cross-appeal.

The original appeal on questions of law is directed to a judgment declaring the defendant to be the putative father of a child born to plaintiff.

The facts necessary to an understanding of the question presented are that the plaintiff filed her complaint against the defendant on July 18, 1939. The child was born August 24, 1939, and the cause came on for trial April 17, 1940. Plaintiff had formerly been a married woman. the wife of Harry Armstrong, who sued her for divorce in Knox County on June 27, 1938, following a separation between the parties which occurred in March of 1938. The divorce was granted to Harry Armstrong for plaintiff's aggression on the 28th of February, 1939. It was the claim of plaintiff, supported by her testimony, that the child was conceived on or about December 15, 1938, so that when the child was begotten the plaintiff was a married woman, the wife of Harry Armstrong. When the child was born these parties had been divorced for some six months.

Both the plaintiff and her former husband testified, and from this evidence it appeared that at the time of the separation plaintiff left her home in Knox County and moved to Columbus; that thereafter and until after the time the child was conceived they had been in the presence of each other but once; that was at the Eagles Club on North High Street in Columbus, where there was a large crowd of people present.

The Court charged the jury before argument at the request of defendant that the presumption in law was that the child was legitimate, which presumption could be overcome by testimony, but that the evidence to overcome the presumption "must satisfy you conclusively that either the husband of plaintiff has not powers of procreation or the circumstances were such as to render it impossible that he could be the father of the child by reason of impossibility of access between the parties, and the presumption of legitimacy is present even though there be evidence that the wife was engaged in illicit intercourse during wedlock." And that,

"The plaintiff must, before this child is declared bastard, present such evidence to you as is clear, certain and conclusive and beyond a reasonable doubt to the effect that the child could not have been begotten by the husband of complainant."

And further,

"The testimony of the mother alone, complainant here, is not sufficient to establish the fact that this child is illegitimate. but her evidence, if any, must be corroborated in showing that it was an impossibility for the husband to have been the father of the child."

The Court instructed the jury to like effect in the general charge, and upon the request of the jury, after it had taken the case, reiterated in a state-

ment to them, that they must find from the evidence that there was an impossibility of access between the complainant and her former husband during the period prior to the divorce decree and within the period of possible conception of the child born to the complainant. The Court also, upon the request of the defendant, submitted a special interrogatory to the jury, which was as follows:

"Do you find from the evidence introduced in this case that there was an impossibility of access between the complainant, Bonnie Yerian, and her former husband, Harry S. Armstrong, during the period prior to February 28, 1939, and within the period of possible conception of the child born to the complainant and named in her complaint?"

The jury upon concurrence of nine of its members answered this interrogatory in the affirmative, and upon a unanimous verdict found the defendant guilty. After a motion for new trial was overruled, sentence and judgment were pronounced, to which this appeal is directed.

Five errors are assigned, which may be reduced to three.

The first error is subdivided. Under this heading it is claimed that there was a presumption that the child was legitimate and to remove it, it must appear either that the husband was impotent or that there was impossibility of access, and that the burden of proof upon the plaintiff to remove the presumption must be clear and convincing and beyond a reasonable doubt No error may be predicated upon these contentions, because the court adopted the view of appellant in toto, and so instructed the jury, as heretofore set out. If the question were raised by the record it would not be difficult to find cases to effect that the burden of proof upon the plaintiff should not have been as great as imposed upon her by the trial judge. It is of no benefit in this opinion to comment upon the variance of adjudication upon the burden of proof essential to remove the presumption of legitimacy of a child conceived during wedlock. They are set out in a note to **Powell v Fowler,** (Ohio), 84 Oh St 165, 36 L. R. A. N.S. 255, the principal case defining the degree of proof as clear, certain and conclusive.

It is further urged by the appellant that the testimony of the plaintiff and her former husband respecting the impossibility of sexual intercourse between the parties was not admissible, and if admissible, was not sufficient to remove the presumption of legitimacy of the child.

Many cases are cited by appellant to effect that the testimony of plaintiff and her former husband was not competent, but all of these authorities are from states other than Ohio.

It should be noted that at the time of the trial the marital relation had ceased and the plaintiff and Harry Armstrong no longer sustained the status of husband and wife. As a matter of fact, they offered the most effective proof of which the question to be determined was susceptible.

The right of the mother and her husband to testify in filiation proceedings has been the subject of such comment by the courts in many cases in many jurisdictions. The text book writers begin the discussion with the rule announced by Lord Hardwicke in an early English case wherein he said that a wife was a competent witness to prove the adultery between herself and the defendant, because the secrecy of the act would admit of no other proof. This declaration of Lord Hardwicke was accepted and followed by the courts of England down to 1777, when Lord Mansfield announced the law of England, founded in decency, morality and policy, that neither husband nor wife would be permitted as a witness to bastardize the issue of the wife after marriage by testifying to nonaccess of the husband.

American Jurisprudence concludes that,

594

"It is safe to say that although the latter rule has been disregarded in certain jurisdictions, Louden v Louden, 114 N. J. Equity, 242, Lynch v Rosenberger, 121 Kan. 601, later overruled, and vigorously condemned by Professor Wigmore in his work on Evidence, 4 Wigmore Evidence, 2nd Edition, 387, 388, the weight of authority supports the rule announced by Lord Mansfield."

We will not undertake to cite the numerous cases considering the question. but refer generally to 7 Am. Jur. 640 and 641.

We are referred to **Donselman v Mulligan**, 2 Abs 199, and the opinion of the Court of Appeals of Cuyahoga County, as found in this case among the papers in No. 18371, Docket of the Supreme Court of Ohio. The mother of a child instituted a prosecution against a man other than her husband for failure to provide for the minor. The mother proffered testimony as to the nonaccess of the husband at the time the child was begotten. The trial court refused to accept the testimony which the Court of Appeals held to be erroneous. The court recognized that the rule outside of this state precluded the acceptance of the testimony of the mother, but concluded that in Ohio such testimony was competent and relied upon **Sieg v State**, 1 Abs 814. The Supreme Court overruled a motion to certify the record in the case. We recognize that this action of ▆▆▆▆▆▆▆ the Supreme Court is not equivalent to approval of the principle announced by the Court of Appeals. but it has some weight with us and as the opinion comports with our view of the matter, we accept its pronouncement. although it may be against the rule as announced ▆▆▆▆▆▆ in many other jurisdictions. To impose upon the plaintiff the burden of proving beyond a reasonable doubt the impossibility of access at the time of the conception of the child and then to disqualify both her and her fromer husband as witnesses to that fact, is to set up an insuperable barrier to the establishment of the truth.

It is further assigned as error that the trial court permitted the infant to be exhibited and counsel for complainant to comment to the jury upon certain alleged similarity of physical features between the child and the defendant. It has long since been recognized as approved practice ▆▆▆▆▆▆▆ for either party in a paternity case to exhibit the child to the jury; this, obviously, for the purpose of directing attention to similarity or dissimilarity in features or physical characteristics between the child and the alleged father. This act in itself implies that the jury will make such comparison as each member desires. using his faculties of observation in applying the effect of the visual demonstration of the child. This of necessity incorporates much which can not be carried into the bill of exceptions as a tangible record of the evidence. Many similar situations could be referred to in the trial of causes to juries. The mere fact then that ▆▆▆▆▆▆▆ counsel for the plaintiff made audible comment on certain characteristics which he claimed were common both to the baby and the defendant, is not such a variance from the admitted proper procedure as to constitute prejudicial error.

Another ground of error is that the verdict of the jury is manifestly against the weight of the evidence. Upon the question of the paternity of the child the verdict is well supported by the evidence, subject only to the presumption of legitimacy which attended its birth because of the fact that the child was conceived during marital relation of plaintiff and Harry Armstrong.

As we view the effect of the testimony rebutting this presumption, it becomes merely a question of the credibility of the testimony of plaintiff and her former husband. If what they say is true, then the wife was as inaccessible to the husband for the purposes of sexual intercourse as if they had been separated by his absence beyond the four seas, as was the old test applied to

determine impossibility of access. No matter what the character of proof respecting the impossibility of intercourse between the husband and his wife, there would be present, almost without exception, the question of credibilty. Obviously, in this case, it would have been impossible to have produced enough witnesses other than the plaintiff and her former husband to account for every moment during which they might possibly have been in such proximity to each other as that sexual intercourse could have taken place; so that without respect to the number of witnesses that the plaintiff could have produced tending to establish that he was in one place and his former wife in another, there would yet remain periods of time within which it would have been possible for these parties to have been together.

There are circumstances in this case over and beyond the express testimony of the parties which tend to support the theory of inaccessibility of the wife to the husband, namely, among others, the fact that they were separated under conditions which thereafter led to an action for divorce, which at all times, until it was granted, was pending. This clearly evinced an intention to separate and live apart, and following this intention it appears that the parties lived in places widely separated.

If the jury believed the plaintiff and the corroborating evidence of her former husband and at least one other witness, as it had a right to do, it could have determined in the light of the circumstances that the impossibility of sexual intercourse between them had been proven by the degree of proof requisite upon the plaintiff to produce. The answer to the special interrogatory establishes the fact that the jury acted upon and determined this disputed fact in favor of the plaintiff's claim.

We can not say that the verdict and judgment are manifestly against the weight of the evidence.

The judgment will be affirmed.

GEIGER, PJ. and BARNES, J., concur.

Russell N. Chase and Dan Houck, of Cleveland, for plaintiff.

Carr & Hanna, Sayre, Vail & Dorn, C. W. Deutsch, Squire, Sanders & Dempsey, McKeehan, Merrick, Arter & Stew-