24 N.J. Super. 25 (1952)
93 A.2d 597
DOROTHY ROSS, PLAINTIFF-APPELLANT,
v.
HERBERT MARX, DEFENDANT-RESPONDENT.
OVERSEER OF THE POOR, PLAINTIFF-APPELLANT,
v.
HERBERT MARX, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 1952.
Decided December 17, 1952.
Before Judges EASTWOOD, FRANCIS and PROCTOR.
Mr. Sanford Silverman argued the cause for plaintiffs-appellants.
Mr. Michael G. Alenick argued the cause for defendant-respondent (Messrs. Michael G. Alenick and Lester Sandles attorneys).
*26 The opinion of the court was delivered by PROCTOR, J.S.C.
The only issue in this case is the paternity of an illegitimate child. Blood analyses of the mother, the child and the defendant were made by two doctors, one of whom was appointed by the court upon application by the plaintiff Dorothy Ross. The medical testimony was that the groupings of the blood of the above-mentioned persons excluded the defendant as the father of the child.
We are satisfied that in view of the medical or scientific testimony, together with the other evidence, the proofs preponderated in favor of the defendant. We agree with the result reached by the County Court in entering judgment for the defendant. (21 N.J. Super. 95 (Cty. Ct. 1952)).
The Legislature has authorized the admission in evidence of the results of blood grouping tests in actions to determine the parentage of a child, but only in cases where definite exclusion is indicated. N.J.S. 2A:83-3. The value of blood grouping tests as an aid in the quest for truth was recognized by this court in Cortese v. Cortese, 10 N.J. Super. 152 (App. Div. 1950). See also Anthony v. Anthony, 9 N.J. Super. 411 (Ch. 1950). Discussion of the scientific basis of blood grouping tests, with charts illustrating the blood groupings and types, may be found in Note, 163 A.L.R. 939; 1 Wigmore, Evidence (3rd Ed. 1940), § 165 (b); 34 Cornell L.Q. 72 (1948); 24 Rocky Mt. L. Rev. 237 (1952). In most jurisdictions it is held that expert opinion excluding paternity is not conclusive, but is regarded like any other expert testimony and is to be considered with the other evidence submitted in the case. Arais v. Kalensnikoff, 10 Cal.2d 428, 74 P.2d 1043, 115 A.L.R. 163 (Sup. Ct. 1937); Berry v. Chaplin, 74 Cal. App.2d 652, 169 P.2d 442 (Ct. App. 1946); State ex rel. Slovak v. Holod, 63 Ohio App. 16, 24 N.E.2d 962 (Ct. App. 1939); Harding v. Harding, 22 N.Y.S.2d 810 (Dom. Rel. Ct. N.Y.), affirmed 261 App. Div. 924, 25 N.Y.S.2d 525 (Sup. Ct. 1941); Saks v. Saks, 189 Misc. 667, 71 N.Y.S.2d 797 *27 (Dom. Rel. Ct. 1947); Jordan v. Davis, 143 Me. 185, 57 A.2d 209 (Sup. Ct. 1948). See Note, 163 A.L.R. 939. On the other hand, several recent cases appear to hold that the results of the tests excluding paternity, when competently made, are conclusive. Jordan v. Mace, 144 Me. 351, 69 A.2d 670 (Sup. Ct. 1949); "C" v. "C", 200 Misc. 631, 109 N.Y.S.2d 276 (Sup. Ct. 1951); Commissioner of Welfare v. Costonie, 277 App. Div. 90, 97 N.Y.S.2d 804 (Sup. Ct. 1950).
We do not hold, as did the County Court, that opinions of scientists as to non-paternity, drawn from the results of blood grouping tests, are so infallible as to constitute conclusive evidence thereof. In this regard it is interesting to note that Dr. Philip Levine, an outstanding authority in this field, who testified at the trial, was a member of a committee of three physicians whose report entitled, Medicolegal Application of Blood Grouping Tests, was published recently in the Journal of the American Medical Association. (149 J.A.M.A. 699 (June 14, 1952)). It is further noted that Dr. Lester J. Unger, the physician appointed by the court upon application of the plaintiffs, was a consultant in the preparation of the report. The report, while asserting the high degree of accuracy in the results of blood grouping tests excluding paternity, admitted the possibility of error, and also that there might be mutations which could give rise to exceptions to the theory. Further, at page 703, it is stated:
"While the results of the blood tests are admissible when they exclude paternity, the findings are not binding on the court. That is as it should be. It is the duty of the court to examine the evidence in order to convince itself that the tests have been properly carried out by qualified experts. When the court feels that adequate safeguards have not surrounded the tests, it should order the tests to be repeated by an independent expert, and there is nothing to prevent shipping of the blood to another part of the country if there is no other qualified expert in the state in which the case is being tried. In divorce and separation actions the court often takes into account other considerations, aside from the scientific results of the blood tests. To base decisions entirely on the results of the blood tests in such cases may harm an innocent third party by bastardizing the child. *28 For this reason in a number of cases the court has refused to grant a divorce on the basis of the blood tests alone."
In view of the acknowledgment of the above-mentioned possible exceptions, it cannot be said that the results of the blood grouping tests excluding paternity are conclusive. The statute (N.J.S. 2A:83-3) provides that the testimony of experts to the results of blood grouping tests "shall be receivable in evidence" where definite exclusion is indicated, but the Legislature, perhaps advisedly, made no provision that the results are conclusive. See 20 Am. Jur., Evidence, § 9, p. 39.
Judgment affirmed.