LANGEL, Plaintiff-Appellee, v. LANGEL, Defendant-Appellant.

Ohio Appeals, Fourth District, Athens County.

No. 558. Decided November 20, 1960.

484

*Messrs. Fogle & Fogle,* for appellant.
*Mr. John F. Newcomb,* for appellee.

For further history see *Omnibus Index* in bound volume.

COLLIER, J. This appeal on questions of law is directed to the judgment of the Common Pleas Court of Athens County. On November 11, 1956, Merrill A. Langel, Plaintiff-Appellee, hereinafter referred to as the plaintiff, filed his petition against the defendant-appellant, Juanita V. Langel, herein referred to as the defendant, for divorce, legal and equitable relief. A few months later, the parties resumed living together. On May 6, 1958, plaintiff filed his amended petition, alleging gross neglect of duty as a ground for divorce and further alleging that no children were born as result of said marriage.

On June 16, 1958, the defendant filed her answer to plaintiff's amended petition admitting that no children were born

to the marriage. Defendant also filed a cross-petition seeking a divorce and alimony, in which she alleged, "That the plaintiff, in total disregard of his marital obligations, has refused to have any children and has refused to perform his marital duties." On August 11, 1958, defendant filed a supplemental cross-petition alleging she was then pregnant and that the plaintiff was the father of her child and praying for an amount sufficient for her care and support during the period of pregnancy. On November 25, 1958, plaintiff was directed by the court to pay defendant certain amounts for that purpose. On February 17, 1958, plaintiff filed an answer consisting of a general denial to defendant's cross-petition and supplemental cross-petition.

On May 15, 1959, defendant filed a supplemental answer alleging that a child, Katrina Jo, was born to the parties on March 20, 1959. On May 20, 1959, plaintiff was granted a divorce but all other related matters were continued. On May 6, 1960, after a hearing by the court on the issue of the paternity of the child, a journal entry was filed in which it was "Ordered, Adjudged and Decreed that the plaintiff, Merrill A. Langel, is not the father of the child, born to the defendant, Juanita V. Langel, on March 20, 1959."

The motion for a new trial was overruled and from that judgment the defendant has perfected her appeal to this court on questions of law.

The assignments of error are:

(1) That the trial court erred in receiving into evidence the results of certain blood-grouping tests.

(2) That the judgment of the trial court is contrary to the weight of the evidence and contrary to law.

(3) The trial court erred in refusing to grant a jury trial on the issue of the parentage of the minor child.

(4) The trial court erred in failing to provide representation for Katrina Jo Langel, a minor child.

(5) The trial court erred in overruling the motion for a new trial.

(1) The defendant, under her first assignment of error, claims that the evidence of the blood-grouping tests which indicated that the plaintiff was not the father of the child, was not competent on the ground of relevancy; that the only issue

for determination was whether the plaintiff and defendant had sexual intercourse during the time in which the child must have been conceived; that the real issue is not the parentage of the child, but whether the plaintiff and defendant had sexual intercourse at the probable time of conception of the child.

The record discloses that the plaintiff and defendant separated April 28, 1958. Defendant testified that between April 28, 1958 and August 11, 1958, the plaintiff visited her home on a number of occasions and that they had sexual intercourse five or ten times during that period of time.

The plaintiff admits that he returned to their former home where the defendant lived on three or four occasions, but claims he was always accompanied by other persons and denies that he and defendant had any sexual relations after April 28, 1958. The medical proof is that the child must have been conceived in June, 1958.

The guide post for trial courts in Ohio in cases of this kind is the case of *The State, ex rel. Walker,* v. *Clark,* 144 Ohio St., 305, 58 N. E. (2d), 773, in which it is held:

(2) "A child conceived during the existence of a lawful marital relation is presumed in law to be legitimate—a procreation of the husband and wife.

(3) Such presumption is not conclusive and may be rebutted by evidence, it must be clear and convincing that there was no sexual connection between the husband and wife during the time in which the child must have been conceived."

It will be noted that in order to rebut the presumption of legitimacy of a child conceived in wedlock, the evidence must be clear and convincing that there was no sexual connection between the husband and wife during the time the child must have been conceived. If the evidence had shown such sexual relations between the plaintiff and defendant, under the pronouncement of the Walker case, in our opinion, evidence of blood-grouping tests would not be competent. The only question to be determined was whether the plaintiff and defendant did have such sexual connection. If so, the presumption is that the child is legitimate and there would be no issuable fact for the court to determine. This question was in dispute. The testimony of the plaintiff and defendant on this issue is in direct conflict.

Since we have concluded that the real issue is whether the parties to this action had sexual connection at the time of conception, the question is whether the admission of the blood-grouping tests was error on the ground of relevancy. The term, "Relevant Evidence" adopted by the Supreme Court of Ohio in *Barnett* v. *State,* 104 Ohio St., 298, 135 N. E., 647, is defined as follows:

"Any matter of fact, the effect, tendency or design of which, when presented to the mind, is to produce a persuasion concerning the existence of some other matter of fact—a persuasion either affirming or disaffirming of its existence."

Greenleaf's definition, also quoted in the same opinion is:

"All the means by which any matter of fact, the truth of which is submitted to investigation, is established or disapproved."

For further authority on the tests of relevancy of evidence see 21 Ohio Jurisprudence 2d, 187, Section 175, Evidence.

Applying these definitions, in our opinion, the trial court properly admitted the evidence of the blood-grouping tests as a means to aid and assist the court in determining the disputed question of fact on which the parties gave conflicting testimony. The natural effect of the evidence of the blood-grouping tests excluding the plaintiff as the father of the child, doubtless produced a persuasion in the mind of the trial court that the plaintiff did not have sexual connection with the defendant. In other words, such evidence tended to support and corroborate the plaintiff's testimony and was relevant to the issue to be determined. This assignment of error is overruled.

The defendant also claims that Section 2317.47, Revised Code, authorizing the use of blood-grouping tests does not apply to divorce cases. This statute is in the chapter of the Revised Code on the subject of evidence and in express terms provides:

"Whenever it is relevant in a civil or criminal action or proceeding to determine the paternity or identity of any person, the trial court on motion shall order, etc."

An action for divorce and alimony in Ohio is a special statutory proceeding and a special form of civil action. In the instant case, determination of the question of the legitimacy of this child was relevant and important in a proper disposition

of the property rights and allowances to be made to the defendant. This assignment of error is overruled.

(2) On the question of the weight of the evidence, suffice it to say the evidence is conflicting. Several witnesses testified on behalf of the defendant that the plaintiff was seen about defendant's home between April 28, 1958 and August 11, 1958. The trial court had the opportunity to observe these witnesses first hand. It was the duty of the trial court to determine the credibility of the witnesses. It is a general rule that a reviewing court will not disturb the finding of either a court or jury based upon conflicting inferences reasonably deducible from the evidence. It is only where the record clearly shows a serious mistake or misapprehension so violent as to shock the senses that a judgment will be reversed as being against the manifest weight of the evidence. *Nye* v. *Schuler,* 110 Ohio App., 443 (Ohio Bar, issue of October 10, 1960). After examining the entire record we cannot say, as a matter of law, the presumption of legitimacy was not overcome by clear and convincing evidence.

(3) Did the trial court err in refusing the defendant a jury trial on the question of the paternity of the minor child?

On the trial of issues, Section 2311.04, Revised Code, so far as pertinent, provides:

"Issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury, unless a jury trial is waived, or a reference is ordered as provided in such sections. All other issues of fact shall be tried by the court, subject to its power to order any issue to be tried by a jury, or referred."

Obviously, the issue of fact before the court in the instant case was not one triable by jury under this statute as a matter of right. It was within the discretion of the trial court whether the question of fact as to the paternity of the child should have been submitted to a jury. Had this been done, the verdict of the jury would not have been conclusive or binding on the trial court but would have served merely to aid the judge in forming his opinion. The final determination of the issue of paternity was the duty of the court. 39 Ohio Jurisprudence, 1189, Section 446, on Trial. We find no error in this respect.

(4) Under assignment No. 4 defendant claims error in not providing counsel for the minor child. Defendant contends that the child whose paternity was in question had rights and interests inconsistent with those of the mother that should have been protected.

An examination of the authorities annotated in 65 A. L. R. (2d), 1392, discloses that in Wisconsin by statute and in New York by court decisions the appointment of a guardian ad litem is necessary in an action in which the legitimacy of a child born to a married woman is involved. The same authority reads:

"But the widespread practice in other jurisdictions is to litigate the question of paternity without the appointment of a guardian ad litem. One reason for this practice is that in so far as support for the child is concerned, it is paid to the wife, and she ordinarily has such an interest in the question as to insure that it will be adequately presented to the court. Again, if the child is not a party to the action he is not bound by the adjudication concerning paternity, so that there is little point in appointing a guardian ad litem for him."

So far as we are able to determine it has never been the practice in Ohio to include children born in wedlock as parties in a divorce action. Furthermore, we find no place in the record where a request was made in the trial court for the appointment of a guardian ad litem or separate counsel to represent the child. This assignment is overruled.

The same alleged irregularities included in the first four assignments of error in the trial of the case were presented to the trial court in support of the motion for a new trial. Since we find no prejudicial error in any of these assignments, our conclusion is that the trial court correctly overruled the motion for a new trial.

The judgment must be and hereby is affirmed.

Judgment affirmed.

GILLEN, P. J., and RADCLIFF, J., concur.