HARTFORD NATIONAL BANK AND TRUST COMPANY, TRUSTEE (ESTATE OF GRACE E. B. PRINCE) *v.* HELEN B. PRINCE ET AL.

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 144143

Memorandum filed August 30, 1968

*Robinson, Robinson & Cole,* of Hartford, for the plaintiff Hartford National Bank and Trust Company, Trustee.

*Harry E. Back, Jr.,* of Danielson, for the defendants Methodist Church of Danielson, Westfield Cemetery Association, and Danielson Free Public Library.

*Gross, Hyde & Williams,* of Hartford, for the defendant Hartford National Bank and Trust Company, Executor.

*Butler, Volpe & Sacco,* of Hartford, for the defendants Andrew J., Elizabeth A., and Jason C. Bitgood.

*Woisard, Back & Woisard,* of Danielson, for the defendant J. Thomas Leamon.

*William M. Shaughnessy, Jr.,* of Hartford, for heirs of John E. Bitgood.

*Basil T. Tsakonas,* of Danielson, for the defendant John E. Bitgood.

PARSKEY, J.  This is an action brought by the trustee under the will of Grace E. B. Prince seeking the advice of the court with respect to the administration of the trusts established under articles fourth, fifth and sixth of the will.  Under these articles, income is payable to Andrew Don Bitgood, Jr., for life and upon his death to his surviving children during their lives.  Andrew Don Bitgood, Jr., died October 17, 1962, and is survived by four persons claiming to be his children.  Three of these, the defendants Andrew Jackson Bitgood, Elizabeth Ann Bitgood and Jason Craig Bitgood, are concededly Andrew Don Bitgood's surviving children.  The paternity of the fourth, the defendant John Edward Bitgood, also known as Edward John Bitgood, is being questioned in this action.

Vivian Ardell Wilcox intermarried with Andrew Don Bitgood, Jr., October 2, 1939.  From the outset the marriage was a stormy one, resulting in many separations and reconciliations.  In the summer of 1942 the marriage foundered and Vivian instituted divorce proceedings, but this action was discontinued later in the year.  On July 9, 1943, an interlocutory divorce decree was rendered in Vivian's favor by the Superior Court of Rhode Island on the stated ground of "neglect to provide."  On September 9, 1943, Vivian gave birth to the defendant John Edward Bitgood.  The birth certificate named

Andrew Bitgood as the boy's father. On January 8, 1944, a final decree of divorce was rendered. No mention of John Edward Bitgood is made in this decree. It does not appear that any hearing was held prior to the entry of the final decree; from the recitals in the decree it appears that the bonds of matrimony are loosed automatically after a lapse of time unless affirmative steps are taken to keep the strands in place.

During 1942 and 1943, Vivian resided at the home of her parents in Newport, Rhode Island. During all of 1943 and most, if not all, of 1942, Andrew and Vivian were separated from each other. At the end of November, 1942, Andrew entered the coast guard and was stationed at Provincetown, Massachusetts, until the end of December, 1942. During the month of January, 1943, Andrew was stationed at Newport, Rhode Island. In November, 1942, prior to his entry into service, and in December, 1942, following his entry, Andrew visited Vivian on a number of occasions. On some of these occasions Andrew stayed overnight at the Wilcox home and lived with Vivian in connubial symbiosis. He also visited at the Wilcox home during the month of January, 1943.

Andrew started keeping company with Helen Grise in the fall of 1942 and continued his association with her until their marriage on February 6, 1944. In the summer of 1943 and again in 1961 Andrew denied to Helen that he was the father of Edward John Bitgood. He made similar denials to his mother, Ida Bitgood of Moosup, Connecticut.

In the summer and continuing into the fall of 1942 Vivian was keeping company with Edward Krieger, whom she had met while serving as a U.S.O. (United Service Organizations) hostess. She obtained a wedding ring from Krieger and visited his parents in New Jersey, but the two were never married.

It is presumed that a child born during lawful wedlock is the husband's child. *Grant* v. *Stimpson,* 79 Conn. 617, 623. As a corollary, access between the husband and the wife is presumed until the contrary is plainly proved. 10 Am. Jur. 2d, Bastards, § 12. These presumptions can be overcome only by clear, convincing and satisfactory proof that the child is illegitimate. McCormick, Evidence, p. 646. While the proof need not establish absolute impossibility, the presumption is not rebutted by circumstances which only create doubt and suspicion. It may be wholly removed by proper and sufficient evidence showing that the husband was impotent, that he was entirely absent so as to have had no intercourse or communication of any kind with the mother, entirely absent at the period during which the child must in the course of nature have been begotten, or present only under such circumstances as affords clear and satisfactory proof that there was no sexual intercourse. 10 Am. Jur. 2d, Bastards, § 19. Proof of access between husband and wife during the period within which a child must have been begotten is conclusive as to the child's legitimacy, whereas a mere showing that the husband was absent at a time prior to birth corresponding to the normal period of gestation is not enough of itself to establish nonaccess. 10 Am. Jur. 2d, Bastards, § 23.

The contesting children offered three types of evidence to overcome the presumption of legitimacy: (1) denials of paternity by Andrew Don Bitgood, Jr.; (2) evidence claimed to show inferentially that Edward Krieger is probably John Edward's father; (3) evidence claimed to show inferentially nonaccess during the period of gestation.

Denials of paternity. Although declarations involving pedigree are admitted as exceptions to the hearsay rule, there are a number of conditions precedent to their admissibility, three of which are

pertinent to this inquiry. First, the declarant must, if present, have been qualified as a witness to testify. While most courts exclude both in-court and out-of-court declarations by a spouse intended to bastardize his issue, Wigmore has criticized these holdings as illogical now that parties are no longer disqualified as witnesses; 7 Wigmore, Evidence (3d Ed.) § 2064; and the court is inclined to agree. Second, the declaration must have been made before the controversy in the trial of which it is offered had arisen. "Controversy" refers to the subject matter of the dispute and not merely to the actual litigation growing out of the dispute. *Ferguson* v. *Smazer*, 151 Conn. 226, 231. Since support of children born of a marriage is an issue or potential issue in every divorce proceeding and since Andrew's declarations were made subsequent to the institution of a divorce action by Vivian in February, 1943, it cannot be said that Andrew's declarations were made ante litem motam. Third, the declarant had no interest to misrepresent in making the declarations. In view of Andrew's relationship to Helen Grise, of the fact that he intended to marry her as soon as he won his freedom from Vivian, and of the fact that he was exhibiting more than casual interest in her in November and December, 1942, the court cannot find that he had no interest in misrepresenting his relationship to his estranged wife. Because the latter two conditions have not been satisfied, the court, acting under § 227 of the Practice Book, must exclude these denials. It might be added, however, that even were the court to consider these denials, they were, in the absence of some further explanation from Andrew showing the basis for his denials they are the weakest kind of evidence.

Edward Krieger's paternity. Pointing the finger at someone else and suggesting that he is the probable father is no substitute for proof of nonaccess.

If nonaccess is proved, evidence of someone else's paternity is of minor corroborative value. 1 Wigmore, op. cit. § 134. In this case, the nature of the evidence is such that it merely spreads a dust. Neither the similarity of names nor the fact that Vivian and Krieger intended marriage justifies the inference that they engaged in premarital relations, especially at the beginning of their relationship.

Evidence of nonaccess. The average period of gestation is 280 days. Using this measurement would take the time of conception back to December 2, 1942. It is not unusual for the period to extend to 300 days or longer. This would push the time of conception back to November 12. The evidence adduced by the contestants covers only a portion of both periods. There is evidence that Andrew entered the Coast Guard November 28, 1942, and was stationed at Provincetown, Massachusetts, from his date of entry to the end of December. Although there was a suggestion that during the period of "boot training" at Provincetown the trainees were restricted to the base, it is apparent from Andrew's letters to his future wife that either the suggestion had no basis in fact or else the restriction, so-called, did not inhibit Andrew when he desired to leave the base. Although the contestants wish the court to infer that there was no access from November 28, 1942, to January 31, 1943, the evidence proffered is neither clear nor convincing nor satisfactory. Even were the court to disbelieve all of the evidence given by Vivian, by her father, George Wilcox, by her sister Norma Picz, and by their friend Catherine West Hallgrivy, this would not fill the large gaps in the contestants' story. The burden rests with the contestants to prove nonaccess. This burden the contestants have not met.

The court is satisfied, from the affirmative evidence of sexual relations during the crucial period

as well as from the failure of the contestants to establish nonaccess, that John Edward Bitgood is the legitimate son of Andrew Don Bitgood, Jr.

Accordingly, the court answers the questions posed as follows: (A) Defendant John Edward Bitgood is the surviving child of Andrew Don Bitgood, Jr. (B) The corpus of the trusts established in articles fourth, fifth and sixth of the will of Grace E. B. Prince should be divided into five shares. (C) Defendant John Edward Bitgood and his issue are heirs of the Bitgood blood within the meaning of the trusts under articles fourth and fifth of that will.