In re the MARRIAGE OF Elizabeth SCHNECKLOTH and Michael Schneckloth.

Upon the Petition of Elizabeth Schneckloth, Appellee,

And Concerning Michael Schneckloth, Appellant.

No. 66107.

Supreme Court of Iowa.

June 16, 1982.

James L. Tappa of Spector, Tappa, Kapp & Nathan, Rock Island, Ill., for appellant.

Christine M. Luzzie, Iowa City, and Eric Darling, Student Intern, for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, McGIVERIN, and LARSON, JJ.

McCORMICK, Justice.

In this appeal and cross-appeal from a dissolution decree, we review de novo the sufficiency of evidence to establish respondent Michael Schneckloth's paternity of a child born to petitioner Elizabeth Schneckloth during the marriage. Because we find the evidence insufficient on the paternity issue, we reverse on Michael's appeal. This moots Elizabeth's cross-appeal from the child support award, and the cross-appeal is therefore dismissed.

■ The record shows that the trial court exercised its authority to appoint an attorney for the minor child pursuant to section 598.12, The Code. We commend this procedure because we believe it is vital that the interests of a child be vigorously represented in any dispute concerning its legitimacy. In this case, the child's attorney made a thorough investigation but was excused from participating in the trial after concluding that his efforts would merely duplicate those of counsel for the parties. Even though he may have been right, the issue is of sufficient importance that we believe the child's attorney should have participated actively as an advocate for the child through the entire proceeding.

■ In according de novo review, this court disregards evidence to which meritorious objection was made and considers all admissible evidence. *State ex rel. Buechler v. Vinsand,* 318 N.W.2d 208, 210 (Iowa 1982). This principle is important in the present case because two issues affecting the weight of the evidence of paternity were decided against Michael. One concerns the admissibility of his evidence of nonaccess to Elizabeth during the time of the child's conception. The other relates to the persuasive force to be given a blood grouping test purporting to negate Michael's paternity.

■ These issues must be addressed against the background of the general principles governing burden of proof in paternity contests. Paternity must be shown by a preponderance of the evidence. *Moody v. Christiansen,* 306 N.W.2d 775, 777 (Iowa 1981). The law, however, presumes the legitimacy of a child born in wedlock. The presumption is rebuttable by clear, strong and satisfactory evidence. *Kuhns v. Olson,* 258 Iowa 1274, 1276, 141 N.W.2d 925, 926 (1966). Although it is theoretically merely an aid to the party with the burden to prove paternity, its practical effect is to place the burden of proving nonpaternity on the putative father. *See State v. Romaine,* 58 Iowa 46, 11 N.W. 721 (1882).

■ I. *Evidence of nonaccess.* This court has previously adhered to a rule that a spouse will not be permitted to deny having had access to the other spouse in order to establish nonpaternity of a child born in wedlock. *See Craven v. Selway,* 216 Iowa 505, 508, 246 N.W. 821, 823 (1933); *Wallace v. Wallace,* 137 Iowa 37, 45, 114 N.W. 527, 530 (1908). The rule did not prevent proof of nonaccess through other witnesses or proof of illegitimacy by other means such as evidence of the wife's sexual relations with other men. *See Craven,* 216 Iowa at 511–12, 246 N.W. at 824; *Wallace,* 137 Iowa at 46–47, 114 N.W. at 531.

■ Elizabeth contends Michael did not object to the trial court's application of the rule. The record shows, however, that the

issue was raised by her motion in limine asking the court to apply the rule. The court reserved ruling, permitting Elizabeth to interpose a standing objection to Michael's testimony concerning nonaccess. After trial, the court entered an order sustaining the motion, thus effectively striking Michael's nonaccess testimony. Thus, even though Elizabeth took the initiative, Michael's offering of nonaccess testimony in the face of her motion and objection squarely presented the issue to the trial court. Error was clearly preserved.

The rule originated with dictum by Lord Mansfield in *Goodright v. Moss*, 98 Eng. Reg. 1257 (K.B.1777), in furtherance of the concept that "decency, morality, and policy" militate against branding a child born in wedlock as illegitimate. *Id.* at 1258. Neither Lord Mansfield nor the cases adopting the rule explain why the same reasoning would not exclude other evidence of illegitimacy, making the presumption of legitimacy conclusive. The history of the rule is traced in VII J. Wigmore, *Evidence in Trials at Common Law* § 2063 (Chadbourne rev. 1978). It has been uniformly criticized by commentators as illogical, unsound, misguided, unwarranted, and unjust. *See id.* at §§ 2063–64; Clark, *The Law of Domestic Relations in the United States* § 13.7 at 398 (1968); J. Maguire, *Evidence: Common Sense and Common Law* 91 (1947); C. McCormick, *Handbook of the Law of Evidence* § 67 at 146 (2d ed. E. Cleary 1972).

Even though the rule was generally followed in other jurisdictions at the time of this court's 1908 decision in *Wallace*, the vast majority of jurisdictions that have examined it in recent years have rejected it. *See Coffman v. Coffman*, 121 Ariz. 522, 591 P.2d 1010 (Ariz.Ct.App.1979); *Vasquez v. Esquibel*, 141 Colo. 5, 346 P.2d 293 (1959); *Hartford National Bank & Trust Co. v. Prince*, 28 Conn.Supp. 348, 261 A.2d 287 (Super.Ct.1968); *In re Estate of Jerrido*, 339 So.2d 237 (Fla.Dist.Ct.App.1976), *cert. denied*, 346 So.2d 1249 (Fla.1977); *Gibbons v. Maryland Casualty Co.*, 114 Ga.App. 788, 152 S.E.2d 815 (1966); *Alber v. Alber*, 93 Idaho 755, 472 P.2d 321 (1970); *Ventresco v. Bushey*, 159 Me. 241, 191 A.2d 104 (1963);

*Serafin v. Serafin*, 401 Mich. 629, 258 N.W.2d 461 (1977); *Moore v. Smith*, 178 Miss. 383, 172 So. 317 (1937); *In re L*, 499 S.W.2d 490 (Mo.1973) (en banc); *Loudon v. Loudon*, 114 N.J.Eq. 242, 168 A. 840 (1933); *Melvin v. Kazhe*, 83 N.M. 356, 492 P.2d 138 (1971); *Wake County ex rel. Manning v. Green*, 53 N.C.App. 26, 279 S.E.2d 901 (1981); *Yerian v. Brinker*, 33 Ohio L.Abs. 591, 35 N.E.2d 878 (Ct.App.1941); *Commonwealth ex rel. Savruk v. Derby*, 235 Pa.Super. 560, 344 A.2d 624 (1975); *Davis v. Davis*, 521 S.W.2d 603 (Tex.1975); *Peters v. District of Columbia*, 84 A.2d 115 (D.C.App. 1951). The rule was abrogated by statute in England in the Law Reform Act of 1949. *See* VII J. Wigmore, *supra*, § 2063 at 472–73.

As was said in an analogous situation, we believe Lord Mansfield's rule constitutes "the merest anachronism in legal theory and an indefensible obstruction to truth in practice." *See State v. Farber*, 314 N.W.2d 365, 367 (Iowa 1982), quoting VIII J. Wigmore, *supra*, § 228 at 221. We join the jurisdictions that have rejected it. We thus overrule the *Craven* and *Wallace* cases. In our de novo review we consider Michael's nonaccess testimony along with the other admissible evidence on the paternity issue.

II. *The blood grouping test.* The parties and the child underwent blood tests at St. Luke's hospital in Davenport. An interpretation of the results by a Davenport physician was admitted at trial by stipulation, Elizabeth disclaiming only any agreement concerning the "conclusive or probative value" of the evidence. The doctor recited that the child had blood type "A," and both parents had blood type "O." He concluded: "Michael could *not* have fathered [the child] with Elizabeth." (emphasis in original).

In contending this evidence is not persuasive on the paternity issue, Elizabeth concentrates on the possibility of laboratory error in identifying the blood types. Her problem, however, is that she urged no foundation objection to the evidence at trial. By stipulating to its admissibility, she

waived any attack on the foundation for the doctor's opinion. *See Anonymous v. Anonymous,* 10 Ariz.App. 496, 501, 460 P.2d 32, 37 (1969); *Rose v. Rose,* 16 Ohio App.2d 123, 131, 45 Ohio Op.2d 372, 377, 242 N.E.2d 677, 683 (1968). When evidence is received without objection, it becomes part of the evidence in the case, and is usable as proof to the extent of its rational persuasive power. *Tamm, Inc. v. Pildis,* 249 N.W.2d 823, 833 (Iowa 1976). Under this record any issue about the accuracy of the testing is purely speculative.

Not only did Elizabeth fail to object to admissibility of the doctor's opinion, but she testified to a belief that her blood type is "O" and the child's blood type is "A." She did not object to Michael's testimony that his blood type is "O."

The real question is the probative value of the evidence. Once the accuracy of test procedures is removed from consideration, courts usually find results that show nonpaternity either to be conclusive or highly persuasive on the issue. *See Anonymous v. Anonymous, supra; Richardson v. Richardson,* 252 Ark. 244, 478 S.W.2d 423 (1972); *Beck v. Beck,* 153 Colo. 90, 384 P.2d 731 (1963); *P. v. S.,* 407 A.2d 244 (Del.1978); *Simmons v. Simmons,* 479 S.W.2d 585 (Ky. 1972); *Commonwealth v. D'Avella,* 339 Mass. 642, .162 N.E.2d 19 (1959); *Jordan v. Mace,* 144 Me. 351, 69 A.2d 670 (1949); *Hanson v. Hanson,* 311 Minn. 388, 249 N.W.2d 452 (1977); *Houghton v. Houghton,* 179 Neb. 275, 137 N.W.2d 861 (1965); *Ross v. Marx,* 21 N.J.Super. 95, 90 A.2d 545 (Co.Ct. 1952), *aff'd,* 24 N.J.Super. 25, 93 A.2d 597; *Tacchi v. Tacchi,* 47 Misc.2d 996, 195 N.Y. S.2d 892 (1959); *Bunting v. Beacham,* 45 N.C.App. 304, 262 S.E.2d 672 (1980); *Langel v. Langel,* 17 Ohio Op.2d 63, 85 Ohio L.Abs. 483, 175 N.E.2d 312 (1960); *Commonwealth v. Gromo,* 190 Pa.Super. 519, 154 A.2d 417 (1959); *Adam v. Adam,* 254 N.W.2d 123 (S.D.1977); *State ex rel. Lyons v. DeValk,* 47 Wis.2d 200, 177 N.W.2d 106 (1970).

The powerful if not conclusive nature of blood grouping tests that exclude paternity was noted by the Supreme Court in *Little v. Streater,* 452 U.S. 1, 6–7, 101 S.Ct. 2202, 2206, 68 L.Ed.2d 627, 633 (1981). The Court quoted an evaluation of the modern status of such tests from 1 S. Schatkin, *Disputed Paternity Proceedings* § 9.13 (1975):

> As far as the accuracy, reliability, dependability—even infallibility—of the test are concerned, there is no longer any controversy. The result of the test is universally accepted by distinguished scientific and medical authority. There is, in fact, no living authority of repute, medical or legal, who may be cited adversely.... [T]here is now ... practically universal and unanimous judicial willingness to give decisive and controlling evidentiary weight to a blood test exclusion of paternity.

We believe this description accurately reflects the prevailing scientific and judicial view concerning the persuasive force of the evidence.

■ Because we review the evidence de novo in this case, we need not decide whether exclusionary blood grouping test results are conclusive as a matter of law. We find that the results in combination with the other evidence in this case are sufficient to rebut the presumption of legitimacy. Under the whole record, we conclude that Elizabeth did not meet her burden to prove paternity by a preponderance of the evidence, even with the aid of the presumption. Thus the paternity provision of the decree must be reversed. Because this moots the cross-appeal from the support award, we do not reach that issue.

REVERSED ON THE APPEAL; CROSS–APPEAL DISMISSED.