**Todd S. METALLO, Petitioner-Appellee,**

v.

**Betty L. Metallo MUSENGO and Frank Musengo, Respondents-Appellants.**

**No. 83–1538.**

Court of Appeals of Iowa.

June 26, 1984.

Kevin H. Clefisch of Clefisch & Saunders, Garnavillo, Iowa, for respondents-appellants.

Michael J. Schuster of Schuster & Mick, Guttenberg, Iowa, for petitioner-appellee.

Heard by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

HAYDEN, Judge.

Respondents appeal from the trial court's decree under Iowa Code chapter 598A (1983) adjudging petitioner to be the legal father of a minor child and awarding him visitation rights.

Respondents, Betty Metallo Musengo and Frank Musengo, were married in 1966. Their marriage was dissolved in 1972. In that same year Betty married petitioner, Todd Metallo. Periodically during the marriage Betty left Todd without warning and without leaving a forwarding address. In September of 1974 Celeste was born while the parties were married and living together. Todd was listed as Celeste's father on her birth certificate. Betty left in 1975, taking Celeste with her, and obtained a default divorce decree in Colorado. Todd alleged at trial that he did not contest the dissolution because he could not afford an attorney and because he believed Betty would come back to him as she had in the past. The Colorado court was not informed of Celeste's existence.

In 1976 Betty remarried Frank but periodically she and Celeste would return to Todd and live with him as a family unit. The record shows that Betty lived with Todd on at least four separate occasions

after the dissolution of their marriage. This apparently has not occurred since about 1981. In 1982 Frank and Betty had Celeste's birth certificate changed in proceedings in California to show Frank as the father. That same year Frank, Betty, Celeste, and a younger child, Danny, moved to Guttenburg, Iowa.

Todd claims that during the times Betty and Celeste were not living with him he made diligent efforts to find them and attempted to send them money and gifts. In May 1983 Todd filed a petition in Clayton County, Iowa, requesting visitation rights with Celeste. Betty and Frank oppose visitation on the grounds that it would be disruptive for Celeste. Betty claims that neither Todd nor Frank is Celeste's biological father.

The trial court after a hearing found Todd to be the "legal father" of Celeste and awarded him visitation rights. On appeal Betty and Frank contend: (1) the trial court should have found the 1975 Colorado dissolution decree binding on the issue of Todd's paternity under the doctrine of res judicata; (2) the trial court erred in modifying the dissolution decree without a finding of changed circumstances; (3) the evidence of Todd's nonaccess to Betty at the time of Celeste's conception was sufficient to rebut the presumption of legitimacy arising from Todd and Betty's marriage; and (4) visitation with Todd would not be in Celeste's best interests.

Our review of this equity proceeding is de novo. Iowa R.App.P. 4. While we are not bound by the findings of the trial court, we do give weight to them, especially where the credibility of witnesses is involved. Iowa R.App.P. 14(f)(7).

I. *Res Judicata.* In the Colorado dissolution proceeding Betty filed a petition stating: "No children were born as issue of this marriage." An informational data sheet filed with the court showed the number of children under age eighteen to be zero. The Colorado court found that: "No children were born as issue of the parties."

At trial before the Iowa court Betty testified that she did not disclose Celeste's birth in the dissolution action because Todd is not Celeste's father. Respondents claim that the issues of the paternity of Celeste and Todd's right to visitation were finally and conclusively adjudicated in the Colorado dissolution proceeding and cannot be relitigated now.

In *Sandler v. Sandler,* 258 Iowa 84, 137 N.W.2d 591 (1965), the supreme court allowed modification of the child support provision of a dissolution decree. The court stated:

> In the case before us the custody and support provisions of the original decree are final as to the issues then before the court but they are "not res adjudicata except as to the facts and conditions before the court at the time of the decree, even as between the parties." *Barnett v. Blakley,* 202 Iowa 1, 6, 209 N.W. 412. The original order for child support was based on defendant's own testimony. His current income is more than was then disclosed. He admits the former allowance is inadequate for his children's support. He is in no position to urge, against a modification, his own misleading of the court in the first instance. To recognize such a defense as sound would open the door to fraud on the court.

*Id.* at 86, 137 N.W.2d at 592.

■ The present case presents a similar situation. Betty urges that the Colorado proceeding adjudicated the paternity and visitation issues when her own documents misled the Colorado court into believing that there were no children and that paternity and visitation were not issues in the dissolution. The present action is not barred by the doctrines of claim or issue preclusion.

■ II. *Substantial Change in Circumstances.* We also reject respondents' argument that the trial court erred in awarding Todd visitation rights without finding a substantial change in circumstances since the dissolution decree. The trial court determined that the visitation issue was incident to the dissolution proceeding and was not a modification of the

decree. In *In re Marriage of Teepe*, 271 N.W.2d 740 (Iowa 1978), the wife was pregnant at the time of the dissolution but the decree made no provision for custody. The supreme court held that a subsequent custody proceeding was not a modification of the original decree but was a request for an additional determination. *Id.* at 742. Celeste's existence was unknown to the Colorado court and, therefore, the dissolution decree made no provision for custody or visitation. Todd's petition under the Uniform Child Custody Jurisdiction Act seeks an additional determination of an issue not covered by the original decree. It is not a modification of the decree and so no showing of changed circumstances is necessary.

■■■ III. *Paternity.* The main issue in this case is whether Todd is Celeste's father. The law presumes the legitimacy of a child born in wedlock. *In re Marriage of Schneckloth*, 320 N.W.2d 535, 536 (Iowa 1982). This presumption can be rebutted by clear, strong, and satisfactory evidence. *Id.* The practical effect of the presumption is to place the burden of proving nonpaternity on the party denying the legitimacy of the child. *Id.* One spouse is no longer prohibited in Iowa from denying access to the other spouse in order to prove nonpaternity. *Id.* at 536–37.

In *Schneckloth* the husband testified that he did not have access to his wife during the period of the child's conception. The husband also presented the results a blood grouping test which supported his denial of paternity. The court concluded that all of the evidence presented was sufficient to rebut the presumption of legitimacy. *Id.* at 538. Likewise, in *In re Estate of Hawk*, 329 N.W.2d 660, 662 (Iowa 1983), the supreme court held that testimony of the mother that her husband was not her child's father coupled with the results of a blood test concluding that the husband could not have fathered the child overcame the presumption of legitimacy.

■■■ Betty testified that she and Todd did not have sexual relations in December of 1973, the month she believed Celeste was conceived. However, she admitted having sexual relations with Todd in late January of 1974, approximately eight months before Celeste's birth. This was the only evidence presented by Betty to rebut the presumption that Celeste is legitimate. We note that Betty's credibility is crucial in weighing this testimony and that the trial court is in a better position to evaluate the credibility of witnesses than are we. *See* Iowa R.App.P. 14(f)(7). We agree with the trial court's conclusion that the evidence presented is insufficient to rebut the presumption of legitimacy arising from the marriage. The rebuttal evidence is not clear, strong, and satisfactory. Therefore, Todd is Celeste's legal father.

■■■ IV. *Visitation.* Respondents maintain that even if Todd is found to be Celeste's father, visitation with him would not be in her best interests. Ordinarily the best interests of children require a continuing association with a noncustodial parent unless the contrary is clearly shown. *In re Marriage of Hubbard*, 315 N.W.2d 75, 82 (Iowa 1982); *Anthony v. Anthony*, 204 N.W.2d 829, 833 (Iowa 1973). We have found nothing in the record indicating that it would not be in Celeste's best interests to visit Todd. Although Betty and Todd's marriage was dissolved when Celeste was very young, after the dissolution the three of them lived together as a family on several occasions. Todd has not regularly supported his child but at trial he indicated a willingness to do so. Betty admitted that Todd attempted to send money and presents during the times she was not living with him. Betty also testified that Todd on occasion had given her blank checks and allowed her to fill in whatever amount she needed.

Betty and Frank argue that visitation would disrupt Celeste's stable home environment. The record shows, however, that Celeste's environment in Guttenberg is not so stable. Betty testified that she had not continuously lived in the same residence with Frank and the two children. She lived outside the marital home from September of 1982 until approximately one week be-

fore trial. Furthermore, Frank testified that he would be spending approximately one year in prison in Leavenworth, Kansas, for willful failure to file federal income tax returns.

We agree with the trial court that Todd is entitled to visitation with his daughter.

AFFIRMED.