[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION DE MOTION TO REOPEN AND MODIFY JUDGMENT (123)
I
The plaintiff married the defendant, whose maiden name was Mary Ann White, on July 1, 1972. On March 6, 1980, the plaintiff, through his attorney, commenced this action against the defendant, seeking a dissolution of their marriage. In the complaint, the plaintiff alleged
 "4. The Plaintiff and Defendant have two (2) minor children issue of this marriage, namely JERMAINE GATLING, born January 31, 1974 and MARLON GATLING, born July 22, 1977.
 5. There are no other minor children born to the wife since the date of the marriage."
Prior to the final hearing, the plaintiff amended his complaint to allege that the State of Connecticut was currently contributing to the support of defendant, and on July 7, 1980, the Attorney General's office appeared on behalf of the interest of the State of Connecticut. The defendant never filed an appearance in this case prior to entry of judgment on October 30, 1980, at which time the plaintiff appeared to prosecute the claim for a dissolution of the marriage and the defendant made default of appearance. Based on the CT Page 802 evidence then offered by the plaintiff, the court found, inter alia, that
 "4. Only the following minor child or children have been born to the wife since the date of said marriage, all of whom are the lawful issue of the parties hereto:
 JERMAINE GATLING, born January 31, 1974 MARLON GATLING, born July 22, 1977")
and then entered judgment dissolving the marriage; awarded custody of both children to the defendant subject to the right of reasonable visitation in the plaintiff; ordered the plaintiff to pay defendant $1.00 per year as alimony, $30.00 weekly for support of each child, payable to the Family Relations Office for the benefit of the State of Connecticut; provide medical insurance, if available through plaintiff's employment; and to pay $10.00 weekly on an arrearage of $277.80 as of June 30, 1980.
Except for a motion for modification filed by the State of Connecticut on April 3, 1981 and granted by the court on May 18, 1981 increasing the arrearage by $185.20, the judgment was otherwise undisturbed until the State of Connecticut moved to modify support by motion filed September 21, 1989. The plaintiff was cited to appear at a hearing thereon to be held October 27, 1989. The plaintiff appeared pro se on that date and, after obtaining a continuance to December 1, 1989, appeared through an attorney on the subsequent date at the Family Support Magistrate's court.
While the State's motion for modification was pending, the plaintiff brought an order to show cause dated March 2, 1990, seeking a blood test concerning the paternity of the minor children and also sought an order to reopen and modify the judgment as to the finding of paternity, claiming not to be the biological father. The basis of plaintiff's claim is alleged, in the motion, to be
 "that he was defrauded into entering into a judgment of dissolution and orders of custody and support by representations of the defendant concerning the paternity of said minor children."
The plaintiff filed a subsequent motion dated July 3, 1990, seeking to open and modify the judgment with respect to the paternity of the younger child only, which is the motion heard by the court.
The plaintiff testified that he never had any reason to question the paternity of the minor child, Marlon, until his present wife was CT Page 803 unable to become pregnant. They sought medical testing. The plaintiff testified that his wife's tests revealed no problem, so the doctor sent him for testing. As a result of this activity, the plaintiff claims that for the first time was the question raised in the plaintiff's mind of the paternity of the two children born to defendant. He testified that he then decided to seek blood tests.
Although the plaintiff's order to show cause seeking an order for blood tests was never acted upon by the court, the plaintiff arranged for the testing at Hartford Hospital and spoke to the defendant, giving her the option of either agreeing to the test voluntarily or having to come to court. The court finds that the defendant agreed voluntarily to cooperate with the plaintiff in having the tests done and further finds no basis to support a claim that there was any coercion of defendant.
The Hartford Hospital report (plaintiff's Exhibit A) concluded that the likelihood that the plaintiff was the father of the older boy is 99.8%, but that the plaintiff is excluded as the biological father of Marlon.
 III
During the course of their marriage, there came a period of time, prior to the birth of Marlon, that the parties lived apart. What transpired during the separation is somewhat in dispute but the court finds, after weighing the credibility of each party, that the plaintiff had sufficient indication that another man may have had sexual access to the defendant during the separation, and that the plaintiff did state to the defendant that another man could be responsible for the defendant's pregnancy with Marlon. The court finds that contrary to the plaintiff's present claims of ignorance, he elected to reconcile with the defendant, that he voluntarily elected to accept Marlon as his son, and that the defendant did not deny the possibility of her extra marital affair.
 IV
The plaintiff cites Freda v. Freda, 39 Conn. Sup. 230 (1984) as authority for his motion to open the judgment in this case.
In Freda, the plaintiff husband brought the action against the defendant wife who had given birth to two children during the marriage. The plaintiff then sought to modify the court's finding in the judgment that both children were issue of the marriage by alleging that he only recently learned that the child was not his. The plaintiff alleged that the defendant
 ". . .wrongfully, fraudulently and with intent to deceive kept the true parentage of the child a secret CT Page 804 from him."
The judgment in Freda was entered after an uncontested hearing and paternity was not actually litigated, making the claim of collateral estoppel inapplicable. The same situation prevails in the present case.
The following quote from Freda, at p. 233, summarizes the basic law:
 "It is presumed that a child born during lawful wedlock is the husband's child. Grant v. Stimpson, 79 Conn. 617, 623, 66 A. 166 (1907). This presumption can be overcome only by clear, convincing and satisfactory proof that the child is illegitimate. Schaffer v. Schaffer, 187 Conn. 224, 226, 445 A.2d 589 (1982); Hartford National Bank Trust Co. v. Prince, 28 Conn. Sup. 348, 351, 261 A.2d 287 (1968), McCormick, Evidence p. 646.
 A decision attributing paternity is no less weighty than one terminating parental rights. Holland v. Holland, 188 Conn. 354, 363, 449 A.2d 1010 (1982)."
Also cited to the court is the case of Perkins v. Perkins,34 Conn. Sup. 187, which dealt with the plaintiff's marriage to the defendant who was then pregnant by another man who had rejected her. The plaintiff promised the defendant, prior to the marriage, that he would not deny that the child was his. The court, in ruling on the plaintiff's claim, as part of his dissolution complaint that the child was not issue of the marriage, held that the defendant had relied on the plaintiff's representations in changing her position by marrying the plaintiff, giving up the possibility of adoption or of pursuing other means for its support. The Perkins case is analogous to the present case in that the plaintiff and the defendant reconciled, although the plaintiff suspected the defendant of having been intimate with another man. This court finds that the plaintiff had raised the issue of paternity at or shortly after the birth of Marlon, nominating a specific other man as the suspected father.
In order to reopen a judgment, the moving party bears a heavy burden. Fraud must be proven by "clear and satisfactory evidence," a standard more exacting than a fair preponderance of the evidence, Alaimo v. Royer, 188 Conn. 36, 39 (1982); Miller v. Appleby,183 Conn. 51, 55 (1981). The standard is also sometimes stated as "clear, precise and unequivocal evidence," cf. Lopinto v. Haines, 185 Conn. 527,534, 441 A.2d 151 (1981). CT Page 805
Fraud is proven if the court finds:
 ". . .(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury."
Miller, supra at pp. 54-55.
Judgments obtained by fraud may be attacked at any time, Kenworthy v. Kenworthy, 180 Conn. 129, 131.
However, the defendant in this case made no false representation to the plaintiff. As she testified, she thought that the plaintiff had accepted the possibility that the child Marlon may have been as a result of her affair. Both her husband, after the reconciliation, and this other man had sexual access to the defendant.
Although the court finds the allegation of fraud unproven, the plaintiff's motion to reopen must fail for a second reason for the plaintiff's motion
 ". . .will only be granted if the plaintiff is not barred from reopening the judgment by way of the following restrictions:
 . . . (1) There must have been no laches or unreasonable delay by the injured party after the fraud was discovered, (2) There must have been diligence . . . in trying to discover and expose the fraud, (3) There must be clear proof of the perjury or fraud, (4) There must be a substantial likelihood that the result of the new trial will be different. James, Civil Procedure (1965) Section 11.7, pp. 540-42; [note] 36 Ill. L. Rev. 894, 896-97 (1942)." Varley v. Varley, 180 Conn. 1, 4, 428 A.2d 317
(1980).
It is thirteen years since the plaintiff's suspicions first arose.
The plaintiff chose to assume the role of father of Marlon, although this court is satisfied that the plaintiff, rather than raise the question of paternity in a timely manner, certainly by 1980 when he brought the dissolution action, has not exercised diligence in exposing any fraud on the defendant's part. CT Page 806
 "Laches consists of an inexcusable delay which prejudices the defendant." Danaher v. D.N. Flagg Co., 181 Conn. 101, 107 (1980); cf. Friedlander v. Friedlander, 191 Conn. 81, 85 (1983).
Marlon's best interests are also prejudiced if the plaintiff, after 12 years of silence, is allowed to shed the mantle of fatherhood and its attendant responsibilities.
The plaintiff's motion to reopen the judgment is denied.
HARRIGAN, Judge