## (February 17, 1981)

■ MILTON ARONAUER, Respondent, v LEON OHL et al., Defendants, and ERNEST LENGVARY, Appellant. — In an action pursuant to article 15 of the Real Property Actions and Proceedings Law to compel the determination of a claim to real property, defendant Ernest Lengvary appeals, as limited by his brief, from so much of an order of the Supreme Court, Nassau County, dated January 18, 1980, as, in effect, denied his motion to vacate a default judgment of the same court, dated October 12, 1979, which had determined that he had no claim to a certain parcel of real property situated wholly in Nassau County. Order reversed insofar as appealed from, on the law and the facts, without costs or disbursements and appellant's motion to vacate the default judgment of October 12, 1979 is granted. Appellant's time to answer is extended until 20 days after service upon him of a copy of the order to be made hereon, together with notice of entry thereof. Appellant, a retired Hungarian immigrant, who speaks very poor English, owned two parcels of real property in Long Beach, Nassau County, viz., Section 59, Block 239, Lot 33 (Lot No. 1), and Section 59, Block 263, Lot 28 (Lot No. 2), each having the identical assessment. He forwarded a check for $48.90 to the county treasurer which was received in early October, 1976 in payment of the county and general tax on Lot No. 1 for the second half of 1976. The check, however, did not indicate to which of his two parcels the payment was to be applied. The treasurer, in attempting to ascertain the parcel owned by appellant in order to credit the tax payment, only discovered Lot No. 2. This was because Lot No. 1 was still assessed in the name of appellant's predecessor in title, there apparently having been no notice to the treasurer of a change in ownership. Consequently, the treasurer concluded that appellant wished to pay taxes on Lot No. 2, and, having determined that his check was not for the full amount due on Lot No. 2, returned the check, requesting proper payment. On October 29, 1976 appellant forwarded two checks to the county treasurer, which were, in total, for an amount equal to that demanded by the treasurer upon returning appellant's first check. These payments were credited to Lot No. 2. In January, 1977 appellant received a tax bill on Lot No. 1. No indication of arrears appeared thereon. Nevertheless, in February, 1977, the county treasurer, whose records showed Lot No. 1 $48.90 in arrears, sold the tax lien on said lot to the plaintiff. Notice of the tax sale was effected by publication in local newspapers

and by ordinary mail to the owner at the street address of Lot No. 1. The appellant, however, was not named as the owner. Instead, the name of his predecessor in title still appeared on the assessment rolls. In May, 1979 plaintiff commenced the instant action to bar any adverse claims of interest in Lot No. 1. The summons and complaint were allegedly served on the appellant on May 17, 1979. Appellant, nevertheless, failed to appear and, after inquest, a default judgment was entered against him on October 12, 1979. Thereafter, appellant, having received a copy of the judgment, with notice of entry, moved the court for a vacatur, alleging, *inter alia* that he had never been served with the summons and complaint in the instant action. A hearing on the motion was held on January 17, 1980. Plaintiff offered the testimony of the process server. After refreshing his recollection by reviewing his affidavit of service, the process server testified that he had served appellant, without event, on May 17, 1979. He stated: "Well, I knocked on the door and a gentleman came to the door, Mr. Lengvary [the appellant]. I asked for him by name, he said that he was the gentleman I asked for. I told him I had some legal papers for him. I presented him with the legal papers and left." On cross-examination, the process server testified that at the time of service he had not noticed any special identifying features concerning appellant. It was shown, however, that appellant had a partially amputated leg. In an order dated January 18, 1980 Special Term held that the appellant had failed to submit sufficient proof on the issue of lack of personal jurisdiction so as to vacate the default judgment of October 12, 1979. We reverse. Although we hesitate to disturb findings based on conflicting evidence and involving the credibility of witnesses, a fair interpretation of the evidence compels reversal. (Cf. *Gaglio v Gaglio,* 63 AD2d 667.) In light of the undisputed fact that appellant had a partially amputated leg, the testimony of the process server cannot be credited as true. It is incredible that the process server would not have noticed, in serving the summons and complaint, and thereafter remembered, the partial amputation as a special identifying feature of appellant. We find, on this record, that the appellant was not served with the summons and complaint and that the default judgment of October 12, 1979 was, therefore, improperly rendered. Accordingly, pursuant to CPLR 5015 (subd [a], par 4), said default judgment must be vacated. Mollen, P.J., Hopkins, Mangano and Cohalan, JJ., concur.