■ In the Matter of JOAN G., Appellant, v ROBERT W., Respondent. — In a filiation proceeding pursuant to article 5 of the Family Court Act, petitioner appeals from an order of the Family Court, Queens County (Marmarellis, J.), dated March 16, 1979, which, after a hearing, dismissed the petition. By order dated December 29, 1980, this court remitted the matter to the Family Court, Queens County, for the making of findings of fact, and the appeal has been held in abeyance in the interim *(Matter of Joan G. v Robert W.,* 79 AD2d 708). The Family Court has rendered and submitted its findings. Order reversed, on the law and the facts, without costs or disbursements, petition granted, and the matter is remitted to the Family Court, Queens County, for further proceedings on the issue of support. Although we hesitate to disturb findings of fact based on conflicting evidence and involving the credibility of witnesses, a fair interpretation of the evidence compels reversal. (See *Aronauer v Ohl,* 80 AD2d 592.) Petitioner, a married woman who has been separated from her husband since 1976, gave birth to a male child on January 16, 1978. She alleged that respondent, a man to whom she had never been married, was the father of the child. Petitioner testified that she had had an active social relationship with respondent from April, 1977 to June, 1978. This included frequent visits by respondent to petitioner's home where he would often stay overnight. On several of these occasions, petitioner stated that she had had sexual intercourse with respondent, the first time having been in late April, or early May of 1977. Petitioner also stated that from the date she had first met respondent to the last time she had sexual intercourse with him, she had not had sexual relations with any other man, and particularly not with her estranged husband. Petitioner then produced her husband as a witness. He confirmed that he

and his wife had been separated since 1976, and testified that they had not had sexual intercourse since May of that year. He also testified that since their separation, he had only seen his wife on those occasions when he came to her house to pick up his children for a weekend visitation. At those times, he did not enter the house, but met the children on the front stoop. Petitioner's husband stated that he had only entered the house once, and, at that time, petitioner's mother was present. He categorically denied ever having been alone with petitioner since the date of their separation. Petitioner produced other witnesses who corroborated the fact that she and respondent had at least had a social relationship during 1977 and 1978. Two of these witnesses also testified that they had heard respondent refer to the subject child as his son. Respondent testified on his own behalf. He admitted to having often been with petitioner on a social basis in 1977. He even admitted to having frequently stayed overnight at her house in 1977, and to having periodically left clothing there. Nevertheless, he categorically denied ever having had sexual relations with petitioner. It should be noted that respondent adduced no evidence that petitioner had a sexual, or even social, relationship with any other man during 1977. In fact, respondent only testified to having seen petitioner with one other man during this period. That man was her brother-in-law, with whom there was not the slightest indication that petitioner had had a sexual relationship. In the case at bar, there existed a strong presumption that the subject child was born legitimately of petitioner's marriage (see *Matter of Findlay*, 253 NY 1), even though petitioner was separated from her husband *(Commissioner of Public Welfare of City of N.Y. v Koehler*, 284 NY 260; *Matter of Irma N. v Carlos A.F.*, 46 AD2d 893; *Matter of Commissioner of Welfare of City of N.Y. v Leroy C.*, 45 AD2d 963). "However, the presumption of legitimacy is not conclusive: it may be rebutted where to do otherwise would outrage common sense and reason. *([Matter of Findlay, supra]*, at p 8; *Anonymous* v *Anonymous*, 1 AD2d 312.)" *(Matter of Fay*, 44 NY2d 137, 142.) We are satisfied that petitioner presented clear and convincing proof of nonaccess by her husband, so as to rebut the presumption of legitimacy in this case. (See *Matter of Ruth M. v Robert S.*, 37 AD2d 915; *Matter of Iris "GG" v Thomas "HH"*, 37 AD2d 1006.) Her own testimony of nonaccess by her husband was undisputed (see *Matter of Iris "GG" v Thomas "HH", supra)* and was corroborated by the testimony of her husband. (Cf. *Matter of Irma N. v Carlos A.F.*, 46 AD2d 893, *supra.)* We are also satisfied that, by the same standard of proof (see *Matter of Rebmann v Muldoon*, 23 AD2d 163), petitioner proved that at all times relevant to the paternity of the subject child, she had had an ongoing social and sexual relationship with respondent and with no other man. Respondent admitted to an active social relationship with petitioner and of frequent overnight visits to her house. When placed in the context of the other evidence adduced herein, these admissions render incredible respondent's denial of ever having had sexual relations with petitioner. Accordingly, we reverse and grant the petition, finding that respondent is the father of the subject child. The matter is remanded for a hearing on the issue of support. Mangano, J.P., Gibbons, Gulotta and O'Connor, JJ., concur.