JOHN G. ARBOUR *v.* JOHN E. McCULLOUGH

PETERS, HEALEY, PARSKEY, ARMENTANO and SHEA, Js.

Argued December 11, 1981—decision released February 16, 1982

*Daniel B. Lewis,* for the appellant (defendant).

*Albert J. Barr,* for the appellee (plaintiff).

PER CURIAM. This appeal questions the propriety of a judgment ordering the defendant to reimburse the plaintiff for one-half of the plaintiff's loans to two presently inactive corporations in which the

---

[2] The attorney's fee of $1500 was awarded on a judgment of $11,444.76.

parties were principal shareholders and officers, together with one-half of the interest payments on those loans by the plaintiff made in behalf of the corporations.

The following facts are undisputed: The parties formed General Film Development Corporation (hereinafter General Film), a Delaware corporation having its principal place of business in Connecticut, in November, 1971, for the purpose of fostering a photographic imaging process. Contemporaneously with its incorporation, General Film borrowed $155,000 from the Union Trust Company (hereinafter Union Trust), which loan was secured by shares of the plaintiff's Travelers Insurance Company stock valued at $700,000. The parties, together with a third shareholder who by agreement later was released from liability, personally guaranteed the loan to General Film. In May, 1972, Union Trust demanded repayment of the loan. The plaintiff made payment by executing a personal note for $155,000, again secured by his Travelers Insurance Company stock and personally guaranteed by the defendant.

In the fall of 1972, the parties and an inventor formed General Optimation, Inc. (hereinafter General Optimation), a Delaware corporation, which merged with General Film approximately two and one-half years later. Upon the merger, General Film, as the surviving corporation, became liable for the debts of General Optimation.

The plaintiff funded the operation of both corporations by personally borrowing from the Bank of New York and Merrill Lynch, Pierce, Fenner & Smith, Inc., and by selling personal assets. The amount the plaintiff directly loaned to the corpora-

tions from these sources was $287,975, together with interest payments in the amount of $46,181.44 made in behalf of the corporations. In addition, the plaintiff executed personal notes with Union Trust rolling over his initial $155,000 loan to a peak amount of approximately $246,000. Part of the $91,000 excess over his initial loan the plaintiff used personally. By 1978, the plaintiff had reduced the principal amount to $20,000.

On April 26, 1972, the defendant, as president of General Film, signed an acknowledgment that all funds loaned to the corporation were loaned equally by the plaintiff and the defendant.[1] General Film repaid only a small portion of the funds loaned and interest payments made in its behalf by the plaintiff before the corporation became inactive sometime between 1976 and 1978.

In a 1978 complaint, as amended, the plaintiff sought recovery of one-half of the unreimbursed funds he loaned to the corporations, including one-half of the principal and interest the plaintiff paid in behalf of General Film.[2] The plaintiff based his claim for recovery of one-half of the debt resulting

[1] The acknowledgment states in full: "General Film Development Corp., a Delaware Corporation, hereby acknowledges that it owes John G. Arbour and John E. McCullough those amounts indicated, and updated from time to time in its Loan Register, together with interest at a rate appropriate for the times, and which may be accrued if funds are not available to pay it on a current basis. This shall be considered a Demand Loan. It is the understanding of the Corporation that these funds are loaned to the Corporation 50% by J. G. Arbour and 50% by J. E. McCullough."

On June 7, 1973, the plaintiff, as president of General Optimation, signed a virtually identical acknowledgment on behalf of that corporation. The defendant was present at that meeting.

[2] The parties appear to have abandoned at trial their claims and counterclaims with respect to loans guaranteed by the parties for $72,000 and $10,000 to General Film from the City National Bank. The defendant also appears to have abandoned at trial his counter-

from the Union Trust loan upon the defendant's personal guaranty. The other claims were grounded upon an express oral agreement between the parties that they would share equally the liability for the debts of their two ventures. The defendant denied that his liability to the plaintiff exceeded one-half of the $155,000 principal loaned by Union Trust, together with interest thereon, guaranteed by him.[3] He based this denial and his denial of liability for one-half of the plaintiff's other loans to the corporations on his claim that the plaintiff had agreed to contribute funds and the defendant had agreed to contribute solely his business expertise, time and effort to the corporations.

After a trial to the court, the court rendered judgment for the plaintiff in the amounts of $206,187.50 principal and $23,090.72 interest, a sum equal to one-half of the remaining indebtedness recorded in the corporate loan registers for each of the corporations. The court based its order upon its finding that the parties had an agreement that each was liable for one-half of the corporations' indebtedness to the other. The court expressly discredited the defendant's testimony to the contrary.

Although recognizing that the weight accorded to testimony is within the sole province of the trier of fact, the defendant essentially claims in the present appeal that the trial court erred in crediting the

---

claim for reimbursement from the plaintiff of $35,000 the defendant expended in behalf of General Film to purchase stock in Photokinetics, Inc.

[3] In his answer to the plaintiff's complaint the defendant denied owing the plaintiff anything on the Union Trust loan. At trial, however, the defendant admitted that this allegation was untrue and that he was liable for one-half of the $155,000 principal and interest paid by the plaintiff to Union Trust.

testimony of the plaintiff and the documentary evidence introduced by the plaintiff, and in discrediting the testimony of the defendant, on the ground that the plaintiff's case was insufficient as a matter of law.[4] We cannot agree.

The plaintiff testified that the defendant had agreed to share equally in the indebtedness of the corporations, including liability for one-half of the funds the plaintiff loaned to the operation of the businesses. Both the plaintiff and the third initial investor in General Film testified that there existed no agreed division of responsibility for the development of the corporation. Each of the parties was to contribute funds, business expertise, time and effort. Their corporate attorney corroborated the fact that this was the understanding of the parties, although he had not seen it in writing. According to the plaintiff, the defendant was aware of all the loans made to General Film by the plaintiff and had never objected to any of them. The plaintiff explained that the bank loans, the proceeds of which he in turn loaned to the corporations, were in his name because his collateral secured the notes.

The plaintiff introduced into evidence, without objection by the defendant,[5] two loan registers, one entitled "GFD Loan Register, J. E. McCullough &

---

[4] In his brief and at oral argument the defendant both questioned and conceded the sufficiency of the plaintiff's testimony and documentary evidence to support the judgment. If the legal sufficiency of the evidence were not addressed by this court what would remain of the defendant's claims would be a general attack on the credibility of the witnesses and documentary evidence, which attack probably would not be a successful basis for an appeal to this court. See text, infra. Therefore, we will consider the defendant's claim of legal error.

[5] Because the defendant did not object to the introduction of the loan registers at trial, we decline to address his claim that they are sham documents which have no probative value. Practice Book § 3063.

J. G. Arbour," and the other entitled "General Optimation, Inc., Loan Register, J. E. McCullough & J. G. Arbour." In the plaintiff's view these titles indicated the parties' equal liability for the corporate indebtedness and interest payments indicated on the registers, which included entries dated October 10, 1971, through June 29, 1976.

In finding an agreement between the parties to share equally the indebtedness of the corporations, the trial court found significant General Film's acknowledgment to that effect, signed by the defendant as its president, the fact that the parties were principal shareholders and officers, and the testimony of their corporate counsel and of the plaintiff. With respect to the loans from Union Trust, the trial court noted that the bank's representative had testified that he believed that Union Trust could sue the defendant on the guaranty of the plaintiff's loans.[6]

The evidence construed in the light most favorable to the plaintiff more than adequately supports the court's conclusion that an agreement existed between the parties. We cannot agree with the defendant that the trial court erred in crediting this evidence and discrediting the testimony of the defendant to the contrary.[7] "This court cannot retry

---

[6] The trial court stated that Union Trust's representative had testified that the defendant was liable for "any" of the plaintiff's loans with that company based on the guaranty. In fact the banker testified that the defendant was contingently liable for a maximum of $155,000 of the plaintiff's debt, plus interest thereon. Because the issue is not before this court, we express no opinion on the defendant's potential liability to Union Trust.

[7] In assessing the credibility of the defendant, not only did the trial court have an opportunity to observe his demeanor, but the court also had before it a transcript of an earlier hearing in the case at which the defendant testified that he owed the plaintiff one-half of the corporate indebtedness.

the facts or pass upon the credibility of the witnesses." *Kalleher* v. *Orr,* 183 Conn. 125, 128, 438 A.2d 843 (1981). "It is the trial court which had an opportunity to observe the demeanor of the witnesses and the parties; thus it is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." *Kukanskis* v. *Jasut,* 169 Conn. 29, 32–33, 362 A.2d 898 (1975).

To determine the amount owed by the defendant, the trial court relied upon figures in the two loan registers. Although the court was inaccurate with respect to the source of the loans,[8] the documents support the court's conclusion that the plaintiff loaned the corporation $412,375 which had not been repaid and made interest payments totaling $46,181.45.[9] Consistent with the agreement between the parties, the plaintiff was awarded one-half of these sums.

[8] In its memorandum of decision the trial court stated that "[t]he loans at issue in this case are those from the Union Trust Company," and that the plaintiff's loans reflected in the loan registers stemmed from Union Trust rollover loans. The uncontroverted testimony with respect to the source of the loans in the loan registers was that the plaintiff was the sole source of funds he procured from personal loans from Union Trust, other banks and the sale of the plaintiff's personal assets. Because the trial court based its conclusions not only on the defendant's liability as guarantor of at least part of the plaintiff's Union Trust loans, but also upon his promissory liability, this factual error is harmless. E.g., *Harrison* v. *Union & New Haven Trust Co.,* 147 Conn. 435, 440, 162 A.2d 182 (1960); Maltbie, Conn. App. Proc. § 35.

[9] The trial court appears to contradict itself in its findings with respect to the amount of interest paid by the plaintiff in behalf of the corporation. In its memorandum of decision the court states: "[The plaintiff] has also paid the sum of $180,000.00 in interest, 2/3rd [sic] of which he believes are applicable to the loans of the corporation and not to loans for his personal use. Those sums he believes are set forth in the loan register, and the total amount thereof is $46,181.43."

Regardless of whether the court had based its award upon two-thirds of $180,000, or upon $120,000 total interest paid as the plain-

"On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980); see Practice Book § 3060D. In light of the evidence and the whole record in the present case, we hold that the conclusions of the trial court were not clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra, 221–22; see, e.g., *Deluca* v. *C. W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 539, 391 A.2d 170 (1978).

There is no error.

tiff testified to, the plaintiff appears to be shortchanged by several thousand dollars by the court's basing its award solely on the documentary evidence. Nevertheless, the plaintiff has not filed a cross appeal for the purpose of correcting this inaccuracy. In light of the complexity of the evidence before it, the trial court was justified in relying upon the loan registers in making its award.