TIMOTHY HOLLAND *v.* VICKI HOLLAND

PETERS, HEALEY, PARSKEY, ARMENTANO and SHEA, Js.

Argued June 9—decision released September 14, 1982

*Jon C. Blue,* for the appellant (plaintiff).

*Mary von Dorster,* for the appellee (defendant).

*Joseph X. DuMond, Jr.,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (state).

PETERS, J. This case concerns the proper legal standard to be applied by a trier of fact in determining the paternity of a child born to a married woman. The plaintiff husband in a dissolution action was adjudged the father of a child born to the defendant wife although both parties denied his paternity. He now appeals that judgment to this court on both evidentiary and constitutional grounds.

Although the record below is sparse, the following evidence was available to the state trial referee sitting as trier of fact. Vicki Hill and Timothy Holland were married in February, 1976 and had one child, born later that year, whose paternity is not at issue. A second child was born to Vicki Holland on September 7, 1979 after a full term

pregnancy. At the time surrounding the probable conception of this child, the plaintiff was incarcerated in Montville Community Correctional Center, where he remained from February 24, 1978 until February 1, 1979, except for a furlough on Christmas Day of 1978.

The plaintiff testified that he and the defendant last had sexual relations in February, 1978. He further testified that he spent his Christmas Day furlough at the home of his aunt, Mrs. Gardillo, in New London and had no contact with the defendant; Mrs. Gardillo and Vicki Holland both corroborated this account. The only meeting between the Hollands during the plaintiff's incarceration consisted of a visit by the defendant to the correctional center during which, according to the defendant, the parties sat and talked. The defendant testified that the father of the child was a man named Joseph Thomas who had first acknowledged and later disclaimed paternity.

Although no further evidence of paternity was offered, the attorney representing the child submitted a report to the court in which he requested a finding that the plaintiff was the child's father. That request was based in part on an interview conducted by the child's counsel at which the plaintiff apparently at first falsely denied having received any furlough from prison. At trial no questions were asked of the plaintiff concerning this interview or his alleged denial.

In a brief oral memorandum of decision the trial court found both the defendant's children to be issue of the marriage, awarded custody to her, and ordered the plaintiff to pay child support of $20 per week for each child. On this appeal the

plaintiff raises two related claims of error: the insufficiency of the evidence to support the court's finding of paternity and the constitutional impropriety of the presumption of paternity in its allocation of the burden of proof.˗ The defendant, although nominally the appellee, in fact supports the plaintiff's position and joins him in attacking the court's finding of paternity. The appeal is defended by the state of Connecticut, a mandatory party to the divorce action because at the time of the hearing it was contributing toward the support of the defendant and her older child. General Statutes § 46b-55 (a).[1] The younger child's counsel did not file an appellate brief, appear at oral argument, or otherwise participate in this appeal.

This court has only recently determined that "in Connecticut there is a presumption that a child born during lawful wedlock is the child of the husband, which presumption may be rebutted only by clear, convincing, and satisfactory proof that the child is illegitimate." *Schaffer* v. *Schaffer,* 187 Conn. 224, 226, 445 A.2d 589 (1982); see *Grant* v. *Stimpson,* 79 Conn. 617, 623, 66 A. 166 (1907); *Coffman* v. *Coffman,* 121 Ariz. 522, 523, 591 P.2d 1010 (1979); *Happel* v. *Mecklenburger,* 101 Ill. App. 3d 107, 112, 427 N.E.2d 974 (1981); *Perkins* v. *Perkins,* 198 Neb. 401, 404, 253 N.W.2d 42 (1977); *Joan G.* v. *Robert W.,* 83 App. Div. 2d 838, 839, 441 N.Y.S.2d 709 (1981); *Garrett* v. *Garrett,* 54 Ohio App. 2d 25, 30–31, 374 N.E.2d 654 (1977). In other

---

[1] "[General Statutes] Sec. 46b-55. (Formerly Sec. 46-63). ATTORNEY GENERAL AS PARTY. PATERNITY ESTABLISHMENT. (a) The attorney general shall be and remain a party to any action for dissolution of marriage, legal separation or annulment, and to any proceedings after judgment in such action, if any party to the action, or any child of any party, is receiving or has received aid or care from the state."

states, the presumption of paternity may be rebutted by different, more or less stringent, evidentiary showings. See *Vincent B.* v. *Joan R.,* 126 Cal. App. 3d 619, 622–23, 179 Cal. Rptr. 9 (1981) (conclusive presumption of legitimacy); *Coleman* v. *Hudson,* 396 So. 2d 1024, 1026 (Miss. 1981) (beyond a reasonable doubt); *Borchers* v. *McCarter,* 592 P.2d 941, 944 (Mont. 1979) (preponderance of the evidence); see generally McCormick, Evidence (2d Ed. 1972) § 343; 9 Wigmore, Evidence (3d Ed. 1940) § 2527. As applied to the facts of this case, the presumption of paternity requires the plaintiff to prove nonaccess to the defendant at the time of conception by evidence rising to the prescribed standard of clear, convincing and satisfactory proof.

The plaintiff first objects that the trial court misapplied the existing law in finding paternity where all the evidence offered at the hearing factually supported the opposite conclusion. Although it is true that both the plaintiff and the defendant testified without contradiction to the plaintiff's lack of access, neither party disputes the factfinder's role as arbiter of witness credibility. *Arbour* v. *McCullough,* 186 Conn. 280, 286, 440 A.2d 980 (1982); *Kukanskis* v. *Jasut,* 169 Conn. 29, 32–33, 362 A.2d 898 (1975). In the event that the trier rejected their testimony as unworthy of belief, the presumption of legitimacy, which shifts the burden of persuasion to the proponent of illegitimacy, would require a finding that the plaintiff is the child's father. See *O'Dea* v. *Amodeo,* 118 Conn. 58, 64, 170 A. 486 (1934); *Hartford National Bank & Trust Co.* v. *Prince,* 28 Conn. Sup. 348, 353, 261 A.2d 287 (1968); see generally F. James & G. Hazard, Civil Procedure (2d Ed. 1977) § 7.9; McCormick, supra, § 345, p. 826; Morgan, "Instructing the Jury upon

Presumptions and Burden of Proof," 47 Harv. L. Rev. 59 (1933); note, "Presumption of Legitimacy of a Child Born in Wedlock," 33 Harv. L. Rev. 306 (1919).

In his second claim of error, the plaintiff argues that the presumption of legitimacy cannot constitutionally shift the burden of persuasion to him because paternity proceedings in Connecticut are sufficiently criminal in nature to invoke the constitutional doctrine that "in criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt. See *In re Winship*, 397 U.S. 358, 364 [90 S. Ct. 1068, 25 L. Ed. 368 (1970)]; *Mullaney* v. *Wilbur*, 421 U.S. [684, 702–703 n.31, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975)]." *Ulster County Court* v. *Allen*, 442 U.S. 140, 156, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979); see *Sandstrom* v. *Montana*, 442 U.S. 510, 524, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); *State* v. *Mason*, 186 Conn. 574, 582, 442 A.2d 1335 (1982) and cases cited therein. Without the presumption, he argues, there is no evidence of his paternity, and he has therefore been deprived of both liberty and property interests without due process of law.[2]

The cornerstone of the plaintiff's argument is the recent United States Supreme Court decision in *Little* v. *Streater*, 452 U.S. 1, 101 S. Ct. 2202, 68 L. Ed. 2d 627 (1981), which held that Connect-

[2] The fourteenth amendment to the United States constitution prohibits any state from depriving "any person of life, liberty or property, without due process of law. . . ." The constitution of Connecticut, article first, § 8, states that no person shall "be deprived of life, liberty or property without due process of law. . . ."

icut must pay the cost of blood tests for an indigent putative father in a paternity action. Id., 16. That decision rested in part on the following discussion of our paternity proceedings: "The nature of paternity proceedings in Connecticut also bears heavily on appellant's due process claim. Although the state characterizes such proceedings as 'civil,' see *Robertson* v. *Apuzzo,* 170 Conn. 367, 372–73, 365 A.2d 824, 827–28, cert. denied, 429 U.S. 852, 97 S. Ct. 142, 50 L. Ed. 2d 126 (1976), they have 'quasi-criminal' overtones. Connecticut Gen. Stat. § 46b-171 (1981) provides that if a putative father 'is found *guilty,* the court shall order him to stand charged with the support and maintenance of such child' (emphasis added) ; and his subsequent failure to comply with the court's support order is punishable by imprisonment under Conn. Gen. Stat. §§ 46b-171, 46b-215, and 53-304 (1981). Cf. *Walter* v. *Stokes,* 45 Ohio App. 2d 275, 278, 344 N.E.2d 159, 161 (1975) ; *People* v. *Doherty,* 261 App. Div. 86, 87, 24 N.Y.S.2d 821, 823 (1941)." Id., 10. The plaintiff reads this language to mean that a paternity determination within a dissolution action must be accompanied by all the procedural safeguards required for a criminal prosecution. We reject this reading as overbroad.

Although we agree that a finding of paternity under the present circumstances entails both a loss of property in the form of support payments and a potential loss of liberty in the form of statutory sanctions for nonsupport, we do not view these consequences as sufficient under *Little* to transform a civil dissolution action into a criminal proceeding. We can see no relevant distinction under our statutes between the plaintiff's vulnerability and that of any spouse who upon dissolution is assigned

comparable support obligations. See General Statutes §§ 46b-82, 46b-84.[3] We decline to extend *Little's* characterization of paternity actions under General

---

[3] "[General Statutes] Sec. 46b-82. (Formerly Sec. 46-52). ALIMONY. At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

"[General Statutes] Sec. 46b-84. (Formerly Sec. 46-57). PARENTS' OBLIGATION FOR MAINTENANCE OF MINOR CHILD. (a) Upon or subsequent to the annulment or dissolution of any marriage or the entry of a decree of legal separation or divorce, the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance.

"(b) In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child.

"(c) After the granting of a decree annulling or dissolving the marriage or ordering a legal separation, and upon complaint or motion with order and summons made to the superior court by either parent or by the commissioner of administrative services in any case arising under subsection (a) of this section, the court shall inquire into the child's need of maintenance and the respective abilities of the parents to supply maintenance. The court shall make and enforce the decree for the maintenance of the child as it considers just, and may direct security to be given therefor."

Statutes §§ 46b-160[4] et seq., offered for the limited purpose of assigning to the state the cost of blood tests, to all civil actions with attendant statutory sanctions. The " 'quasi-criminal' overtones" detected by Chief Justice Burger echo too faintly in the present dissolution action to preclude the use of a burden-shifting presumption grounded in a universally accepted public policy.

---

[4] "[General Statutes] Sec. 46b-171. (Formerly Sec. 52-442). JUDGMENT AND ORDER OF COURT. If the defendant is found guilty, the court shall order him to stand charged with the support and maintenance of such child, with the assistance of the mother if she is financially able, and to pay a certain sum weekly until the child attains the age of eighteen years; and the court shall ascertain the expense of lying-in and of support and maintenance of the child until the time of rendering judgment, and order him to pay the amount thereof to the complainant, or, if a town or the state has paid such expense, to the town or the state, as the case may be, and shall grant execution for the same and costs of suit taxed as in other civil actions, together with a reasonable attorney's fee; and may require him to become bound with sufficient surety to perform such orders for support and maintenance and the expense of lying-in and to indemnify the state or the town chargeable with the support of such child from any expense for its maintenance. If he fails to comply with any such order, the court may commit him to a community correctional center, there to remain until he complies therewith; but, if it appears that the mother does not apply the weekly allowance paid by him toward the support of such child, and that such child is chargeable, or likely to become chargeable, to the town where it belongs, the court, on application, may discontinue such allowance to the mother, and may direct it to be paid to the selectmen of such town, for such support, and may issue execution in their favor for the same. The provisions of section 17-323a shall apply to this section. The clerk of the court which has rendered judgment for the payment of money for the maintenance of any child under the provisions of this section shall, within twenty-four hours after such judgment has been rendered, notify the selectmen of the town where the child belongs. Any order for the payment of support for any such child may at any time thereafter be set aside or altered by any court issuing such order. Failure of the defendant to obey any order for support made hereunder may be punished as for contempt of court and the costs of commitment of any person imprisoned therefor shall be paid by the state as in criminal cases."

Although we therefore conclude that the trial court could properly apply the presumption of legitimacy to shift the burden of persuasion to the plaintiff, we find no indication in the record that it actually did so. In its brief and conclusory oral memorandum of decision, the trial court simply stated its finding that both children were issue of the plaintiff's marriage. Under ordinary circumstances we would seek to clarify the basis of decision by a remand for articulation. We are, however, troubled as well by the singularly barren evidentiary record before us, which leaves unanswered several relevant questions raised at the hearing.[5] It is also of importance that this case was decided shortly before the issuance of *Little* v. *Streater,* supra. At oral argument counsel for the parties agreed that no blood tests were taken because both husband and wife were indigent at the time of the dissolution action, and the plaintiff's counsel conceded that he elected to pursue an appeal rather than press a motion for court-ordered blood tests at the state's expense.

A decision attributing paternity is no less weighty than one terminating parental rights. See *Santosky* v. *Kramer,* 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) ; *Little* v. *Streater,* supra, 13 ; *Stanley* v. *Illinois,* 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 581 (1972) ; *In re Juvenile Appeal (Docket No. 10155),* 187 Conn. 431, 435, 446 A.2d 808 (1982). We are therefore reluctant to act upon a seriously inadequate evidentiary record when

[5] At oral argument the state indicated that no evidence was offered below on the question of whether conjugal visits were permitted at the Montville correctional facility. There was also no documentary evidence or expert testimony in support of the defendant's testimony that her pregnancy was full term. Both these issues are of course highly relevant to the question of access.

authority now exists to secure highly probative blood test evidence for indigent parties. *Little* v. *Streater,* supra, 8; see *United States* v. *Johnson,* 457 U.S. 537, 550, 102 S. Ct. 2579, 73 L. Ed. 2d 202 (1982). Consequently, we remand this case for the submission of additional evidence by the parties and for a fully articulated memorandum of decision.[6]

In this opinion the other judges concurred.

---

[6] As in *State* v. *Gonzales,* 186 Conn. 426, 436, 441 A.2d 852 (1982), we do not believe that our remand is precluded by General Statutes § 51-183c. We have not found that the trial court's judgment was erroneous; instead we are ordering further proceedings to determine whether error has occurred.