STATE OF CONNECTICUT *v.* EARL M. CHRISTIAN
(11210)

SPEZIALE, C. J., PETERS, HEALEY, SHEA and GRILLO, Js.

Argued November 8, 1982—decision released January 11, 1983

*Douglas S. Ebenstein,* for the appellant (defendant).

*John M. Massameno,* assistant state's attorney, with whom, on the brief, were *John J. Kelly,* state's attorney, and *Susan A. Moch,* deputy assistant state's attorney, for the appellee (state).

SHEA, J. In a trial to the jury the defendant was found guilty of having a weapon in a motor vehicle in violation of General Statutes § 29-38; of possession of heroin in violation of General Statutes § 19-481 (a); and of possession of cocaine in violation of the same statute. In his appeal from the judgment[1] the defendant claims error only in the failure to grant his motion to suppress certain evidence seized after a search of the automobile he was driving at the time he was taken into custody.

---

[1] The defendant's appeal, as amended, states that he appeals from the "judgment of memorandum of decision on motion to suppress and dismiss." Since the appeal was taken after final judgment, we have, as the state suggests in its brief, treated it as an appeal from the judgment of conviction in which the denial of the motion to suppress is claimed as error. See *Angier* v. *Barton,* 160 Conn. 204, 207, 276 A.2d 782 (1970).

The principal issue raised is whether the arresting police officer violated the provisions of Practice Book § 1004, which allows Connecticut residents and those of states which are parties to the interstate no-bail compact to be released without bail when charged with most traffic offenses.[2] We find no violation.

The factual background is adequately set forth in a memorandum of decision, *Maloney, J.*, denying the defendant's motion to suppress and a supplementary rectification thereof. See Practice Book §§ 3082, 3060D. The court found that on November 4, 1980, at about 9 p.m. a state police officer stopped the defendant on interstate highway I-95 in Milford after a radar device indicated that he was proceeding at seventy-four miles per hour in an area where the posted speed limit was fifty-five miles per hour. The defendant was operating the vehicle, which was also occupied by two passengers. The officer approached and asked the defendant for his driver's license and vehicle registration. The defendant produced a Canadian driver's license, which had been issued in Toronto in the province of Ontario, and a Hertz rental agreement for the car. This agreement named another person as lessee of the car, but a document was attached permitting the defendant also to operate it. The officer informed the defendant that he was being charged with speeding and that it was necessary under Connect-

---

[2] "[Practice Book] Sec. 1004. ——— ———CUSTODY NOT REQUIRED

"Except for those offenses listed in Sec. 1005, a resident of the state of Connecticut or of a state that is a signatory of the interstate no-bail compact shall be issued a summons and complaint, and, unless charged with an infraction, he shall be released by the law enforcement officer without bail on his promise to appear. A resident of any other jurisdiction may, in the discretion of the law enforcement officer, be taken into custody or be issued a summons and complaint and released without bail on his promise to appear."

icut law to take him into custody because he was not a resident of a jurisdiction which was a member of the no-bail compact.

Although the defendant claims to have told the officer before he was taken into custody that he resided in Connecticut, the court, relying on the testimony of the officer, found that he had not done so. The court also found that the defendant was not in fact a resident of this state. On appeal the defendant appears to challenge these findings somewhat obliquely, but we are satisfied from reviewing the testimony that they are well supported by the evidence and certainly not "clearly erroneous" as required for correction. Practice Book § 3060D.

After telling the defendant that he was being arrested for speeding, the officer, in accordance with the policy of the state police department, conducted a "pat-down" search of the defendant's person. In doing so the police officer discovered a large wad of money and a paper bag containing foil packets which the officer, on the basis of training he had received in narcotics detection as a state policeman, suspected to contain narcotics. The defendant was then informed that he was being arrested also for illegal possession of narcotics and was advised of his constitutional rights. When the officer inquired whether there was any weapon in the vehicle the defendant replied that there was a pistol in the trunk. The defendant was then requested to open the trunk. Inside the trunk the officer discovered some closed bags or purses, a transparent plastic bag which appeared to contain narcotics and a paper bag containing narcotics paraphernalia. The defendant indicated that the gun was in one of the purses. Upon opening this purse the officer found a loaded pistol, some glass-

ine envelopes, and some identification cards of the defendant from other states. The various items in the trunk as well as the foil packets found on the person of the defendant were seized as evidence. The defendant moved before trial to suppress this evidence claiming that its seizure was illegal.

The defendant did not contest the search of his person and his vehicle as incident to the arrest, but only the validity of the arrest itself. "It is an established rule that a properly conducted warrantless search incident to a lawful arrest is not illegal." *State* v. *Penland,* 174 Conn. 153, 155, 384 A.2d 356, cert. denied, 436 U.S. 906, 98 S. Ct. 2237, 56 L. Ed. 2d 404 (1978). The arrest itself must be valid, however, for the search to be legal. Id.; *State* v. *Cobuzzi,* 161 Conn. 371, 373, 288 A.2d 439 (1971), cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 664 (1972); see *United States* v. *Robinson,* 414 U.S. 218, 235, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973); *Agnello* v. *United States,* 269 U.S. 20, 30–31, 46 S. Ct. 4, 70 L. Ed. 145 (1925); *Weeks* v. *United States,* 232 U.S. 383, 392, 34 S. Ct. 341, 58 L. Ed. 652 (1914). The defendant relies upon these principles[3] in maintaining that the searches of his car and his person were unlawful because he had not been properly arrested before they were

---

[3] The state challenges these principles as applied to the present case where the basis for the claim of illegality in the arrest is no more than a failure to comply with a state statute or regulation concerning arrests which is unrelated to the protection of constitutional rights. Cf. *United States* v. *Turner,* 558 F.2d 46, 50 (3d Cir. 1977); *State* v. *Surowiecki,* 184 Conn. 95, 99–100, 440 A.2d 798 (1981) (*Shea, J.,* dissenting); *State* v. *Andries,* 297 N.W.2d 124, 125 (Minn. 1980); *State* v. *Liberti,* 161 N.J. Super. 575, 580–81, 392 A.2d 169 (1978) (search warrants held valid despite procedural irregularities). Our disposition of this case makes it unnecessary and inappropriate to address that issue.

conducted. He does not dispute that the officer had probable cause to arrest him for speeding but contends (1) that the search of his person, which may have led to the subsequent search of the car, took place before he was taken into custody, and (2) that the officer did not comply with Practice Book § 1004 in arresting him on the speeding charge.

The first contention advanced by the defendant, that the search of his person preceded his arrest, is contrary to the finding of the court that the officer "patted down" the defendant only after first informing him that he was being taken into custody for speeding because he was not a resident of a no-bail compact jurisdiction. This finding is adequately supported by the testimony of the officer. It was within the prerogative of the trial court to disbelieve the defendant's conflicting testimony. *Arbour* v. *McCullough,* 186 Conn. 280, 285–86, 440 A.2d 980 (1982); *Piantedosi* v. *Floridia,* 186 Conn. 275, 277, 440 A.2d 977 (1982); *DeLuca* v. *C. W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 547, 391 A.2d 170 (1978). Furthermore, there is no requirement of a formal announcement of arrest. *Dunaway* v. *New York,* 442 U.S. 200, 212, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979); *State* v. *Januszewski,* 182 Conn. 142, 160–61, 438 A.2d 679 (1980); *State* v. *Derrico,* 181 Conn. 151, 159, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). If the search of the defendant's person was of the search-for-weapons variety sanctioned by *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), as a protective measure when a policeman stops a person who he reasonably suspects has committed an offense, no fourth amendment infraction would have occurred. If it exceeded the limits of such a search, it was in effect a seizure

of the person amounting to an arrest. The existence of probable cause based upon the speeding violation, however, satisfies the fourth amendment. See *United States* v. *Robinson,* supra, 232–35.

The claim that the requirements of Practice Book § 1004 were not followed when the defendant was taken into custody has two aspects: (1) that the officer made no inquiry as to whether the defendant was a resident of Connecticut before taking him into custody; and (2) that, if he had done so, he would have concluded that the defendant did reside in this state.

The trial court found that the officer did not inquire expressly as to the defendant's residence before taking him into custody, but simply inferred that he was not a resident of this state when the defendant handed him a Canadian driver's license. The officer did explain that he was required to arrest the defendant because of his nonresidence. The court rejected the testimony of the defendant that he had declared before he was taken into custody that he was a state resident living in Hartford. Even if the court had found to the contrary, the officer would have been justified under all the circumstances in relying upon the Canadian license which the defendant had displayed initially as evidencing his place of residence. Section 1004 does not prescribe the protocol to be observed in implementing its provisions. We find nothing in the conduct of the officer which was not reasonably related to achieving the purpose of this rule of practice.

The only support to be found for the claim that, if the officer had made a more elaborate inquiry before arrest, he would have concluded that the defendant was a Connecticut resident is the fact

that the police report prepared afterward lists a Hartford address for him. This circumstance is of little significance in view of the trial court's express finding that the defendant did not in fact reside in this state, which the defendant cannot successfully challenge as we have already determined. This finding makes it clear that he is in no position to claim the benefit of § 1004, which is limited to residents of this state and of no-bail compact jurisdictions. *Wright* v. *Brown,* 167 Conn. 464, 468, 356 A.2d 176 (1975); *Hassett* v. *Palmer,* 126 Conn. 468, 473, 12 A.2d 646 (1940) (a party must be within the class of persons protected by a statute to claim a violation of a statutory duty).

Our conclusion that the arrest of the defendant was lawful imports that his motion to suppress was properly denied.

There is no error.

In this opinion the other judges concurred.